**STATE of Missouri ex rel. Nancy NIESS, Bill Biggs, Ross Lauck and J. J. Rupar, Individually and as Representatives of the Joplin Community Teachers Association, an unincorporated association, Relators-Respondents,**

**v.**

**Dr. J. Merrell JUNKINS, Loyd Combs, Colleen Crabb, W. Rand Gilmore, Jr., Dr. Bob F. Steere and Cozetta Thompson, as Officers and Members of the Board of the Joplin R–VIII School Board of the Joplin R–VIII School District, Respondents-Appellants.**

No. 10077.

Missouri Court of Appeals, Springfield District.

March 1, 1978.

Jon Dermott, Joplin, for respondents-appellants.

Thomas D. Carver, Joplin, David T. Greis, Kansas City, for relators-respondents.

Before STONE, P. J., and HOGAN and FLANIGAN, JJ.

1. References to court rules are to Missouri Rules of Court (9th ed. 1978) and V.A.M.R. References to § 163.031 refer to that statute as it appeared in RSMo (Supp.1971). The amendments to § 163.031 made in 1975 did not become effective until September 28, 1975. Laws of Mo. 1975, pp. 133–134. The particular subsection in issue was reenacted and was again numbered 163.031(9) by the Revisor.

HOGAN, Judge.

This is a proceeding in mandamus. Relators, suing as an unincorporated association pursuant to Rule 52.10, V.A.M.R.,[1] sought construction and enforcement of § 163.031(9), which, during the time here involved, regulated the disbursement of school foundation funds[2] and read:

> "[A] school district shall spend for teachers' salaries each year at least eighty percent of the state school funds received under this section that year as provided by section 163.061 and as much of the revenue produced by local tax levies as was spent for teachers' salaries the previous year. In the event a district fails to comply with this provision, the amount by which the district fails to spend funds as provided herein shall be deducted from the district's apportionment for the following year, provided that the state board of education may exempt a school district from this provision if the state board of education determines that circumstances warrant such exemption."

We have concluded we have no jurisdiction of this appeal, but have also concluded that a brief development of the issues presented is appropriate.

Given reasonable intendment and summarized as material here, the substantive averments of the petition for the alternative writ are: (1) that the relators Niess, Biggs, Lauck and Rupar are teachers employed by the respondent school district and are members of an unincorporated association consisting of a majority of all the teachers employed by the district; (2) that the action is brought for and on behalf of all teachers employed by the district and that relators as representatives of the unin-

2. The "state school foundation program," as that term is used in this case, refers to the school finance program established by the 75th General Assembly in 1969 as an emergency measure. Laws of Mo. 1969, p. 268. In this record, the parties consistently refer to the funds provided to the schools under the statute as "school foundation funds."

corporated association will fairly and adequately protect the interests of the association, its members and other teachers who are not members, in accordance with Rule 52.10; [3] (3) that the relators are paid from a teachers' fund as required by statute, and that the payment of teachers' salaries is regulated and determined by the provisions of § 163.031(8) and (9); (4) that respondents have been advised that the school district will receive an allocation of state foundation funds in excess of the sum anticipated by the respondents during the 1974–75 school year; (5) that the relators have repeatedly "demanded" that respondents meet with them for the "purpose of arranging to modify" relators' contracts by "adjusting" relators' compensation so as to absorb the alleged additional amount available in the teachers' fund, and (6) that the teachers of the district have a property right in and a "statutory entitlement" to be paid an additional amount as determined by § 163.031(9). It is also alleged that the teachers employed by the district have no adequate or equally efficient alternative remedy available. Prayer is for the issuance of an alternative writ, hearing of all matters in issue and for issuance of a peremptory writ.

An alternative writ issued. The respondents filed a responsive motion directed to relators' petition and the alternative writ. In their motion, the respondents sought dismissal for failure to state a claim upon which relief could be granted, alleged that the unincorporated association lacked the capacity to sue, and alternatively prayed determination whether the individual relators adequately represented the claims of all teachers employed by the district. In their return to the alternative writ, respondents: (1) admitted that they anticipated receipt of more state foundation funds than they anticipated receiving at the time their preliminary budget was prepared; and (2)

averred that modification of the teachers' contracts to increase their compensation for the 1974–75 school year would be violative of Mo.Const. art. III, § 39(3).[4] Respondents renewed their original objections by reference.

The trial court heard a good deal of oral testimony and received a number of exhibits. For the most part, the evidence consists of competing calculations made by different accounting methods; both the relators and the respondents contend that a proper construction of Chapter 163 demands acceptance of their calculations. In consequence, the evidence is sometimes confusing but not really complex and may, for our purposes, be briefly summarized. Relator Rupar testified that he was a teacher employed by the Joplin R-VIII School Board; that he was chairman of the "negotiating team" designated by the Joplin Community Teachers Association, an unincorporated association, and that one duty of the negotiating team was to meet, discuss and confer with the board when salary figures were established for the school year. It is fairly inferable that the relators were all teachers employed by the respondents. It was shown that there was approximately 340 teachers who were members of the Joplin Community Teachers Association. The trial court found as facts that the relators fairly and adequately represented the unincorporated association and that they had been authorized by the association to bring this action in its behalf.

In general, the relators' evidence tended to show that the district's teachers had "negotiated" their salary schedule in June 1974, or prior to that time, and were given an 8½ percent raise. The school tax levy was increased, in large part to defray the cost of the raise. Nevertheless, at the time the salary schedule was adopted, both the relators and the respondents anticipated

3. The petition also avers, in substance, the existence of the prerequisites of a class action as defined by Rule 52.08(a) and (b).

4. Which reads: "Section 39. The general assembly shall not have power: . . . (3) [T]o grant or to authorize any county or municipal authority to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor after service has been rendered or a contract has been entered into and performed in whole or in part;".

that the district would receive $2,744,120 from the state foundation program, of which 80 percent ($2,219,296) would be allocated to the teachers' fund as required by § 165.011(1), RSMo (1969). It is readily inferable that the relators, at least, relied on this preliminary figure when the 1974–75 salary schedule was adopted.

In September 1974, the district was notified that its prorated apportionment of school foundation funds would be $2,947,672. Eighty percent of this amount or $2,358,138 was thus allocable to and was in fact allocated to the teachers' fund, as indicated by the incorporation of both these figures in the final budget adopted by the district in October 1974.[5] The difference between the "preliminary" and "final" allocation of state foundation funds was $138,842; it is admitted that the teachers' salaries were never adjusted to reflect this increase. During the school year the relators, or their negotiating team, several times sought disbursement of the $138,842 in increased salaries. The respondents agreed only to discuss future payment in the manner suggested by the relators. Such is the substance of the relators' case.

The respondents' evidence was directed toward showing that according to the standards used by the State Board of Education in determining compliance with § 163.031(9), the district would in fact be in compliance for the 1974–75 school year. To this end, the respondents offered two sets of computations prepared by the district, each of which purports to show methods of computation which could be used by the State Board of Education in determining compliance vel non with the statutory requirement. Essentially, these computations are projections, and as we understand the respondents' argument, it is respondents' contention that the relators' computations do not accurately take into account the "local effort" expenditures. Witness Alberty, Coordinator of School Finances for the State Board of Education, stated that if the respondents' data were correct, then the respondents would appear to be in compliance

with the requirements of § 163.031(9), although compliance could not be determined as a fact until completion of the 1974–1975 school year. There was, as noted, a conflict of opinion as to the *method* of computation which should be used to determine compliance.

Pursuant to a pretrial request, the trial court made extensive findings of fact and conclusions of law. These have been helpful, but we need not repeat them verbatim. The trial court concluded that the teachers employed by the district were entitled to receive the $138,842 as additional reimbursement for services, ordered the respondents to meet with the relators to determine the precise amount to be paid to each individual teacher and then to pay the amount due immediately. The respondents appealed.

In this court, the appellants have raised a number of procedural points. One of these points should be noted preliminarily. In this court, the appellants insist that the relators' proof and the trial court's findings are insufficient to sustain this appeal as a class action pursuant to Rule 52.08. Without elaborating, we are inclined to agree. Nevertheless we believe the requirements of Rule 52.10 have been satisfied by the relators' showing that they have fairly and adequately represented the 340 teachers who are members of the Joplin Community Teachers Association and that the Joplin Community Teachers Association represents the majority of the teachers employed by the district. *Owens v. Savage,* 518 S.W.2d 192, 197–198[1] (Mo.App.1974). Moreover, the appellants have conceded on oral argument that they conceive this action as an action brought pursuant to Rule 52.10. We do not believe the appeal stands in the same premature posture as *Peters v. Board of Education of Reorg. Sch. Dist. No. 5,* 506 S.W.2d 429 (Mo.1974), cited by the appellants.

The other points advanced by the appellants are: (1) that their calculations are correct and demonstrate that they are in

5. Specifically, see line 18, listed under code § 31, found p. 12 of respondents' exhibit 1.

compliance with the requirements of § 163.-031(9); (2) even if they are not in compliance with § 163.031(9), any additional payments to the district's teachers would be violative of Mo.Const. art. III, § 39(3); and (3) in any event, mandamus is not a proper remedy because mandamus will not lie when other ordinary and adequate remedies are available. Upon reflection, it is easily seen that any determination of the validity of any of these arguments requires an appellate court to ascertain the meaning of § 163.031(9), in context, i. e., to construe the statute as a preliminary matter.

We are convinced that § 163.031(9) is open to several constructions. The trial court has construed the statute to impose an imperative duty upon the respondents, a duty enforceable by mandamus. Alternatively, and for illustrative purposes only, we think it might reasonably be said that if the statute created a new right, it also provided a remedy, or at least a conditional remedy—withholding by the State Board of Education—and, on general principles, the remedy provided by statute was exclusive. See *Stanton v. Thompson,* 234 Mo. 7, 11, 136 S.W. 698, 699[2] (1911); 1 Am.Jur.2d, Actions, § 74 (1962). If such be the case, then respondents' argument that mandamus will not lie is well taken. We further have the opinion that if one considers (a) the complexity of effective administration of school foundation laws,[6] (b) the fact that § 163.031(5) delegated the apportionment of school foundation funds to the State Board of Education, and (c) the fact that § 163.-031(9) granted the State Board discretionary power to exempt a school district from compliance with the requirements of § 163.-031(9), it might well be concluded that the General Assembly meant to confide the matter of "compliance" vel non to the expertise and administrative discretion of the State Board of Education.

We have elaborated as we have only because our initial impression was that we should request transfer of the appeal prior to opinion on the grounds that the

matter in issue is of statewide interest, deserves to be expedited and in any event would probably have to be decided by our Supreme Court. Two other, very similar appeals are pending, one in our district and one before our colleagues at St. Louis. As indicated, however, we have decided we must transfer the cause for want of jurisdiction. As we believe we have demonstrated, § 163.031(9) directly involves the disbursement of state funds, for public funds acquired by school districts are the property of the state; the district holds these funds only as a statutory trustee. *School Dist. of Mexico, Mo. v. Maple Grove Sch. Dist.,* 359 S.W.2d 743, 746[6] (Mo.1962); *School Dist. of Oakland v. School Dist. of Joplin,* 340 Mo. 779, 102 S.W.2d 909, 910[2] (Mo.1937). The constitutional proviso reserving exclusive original appellate jurisdiction in our Supreme Court extends to cases "involving . . . the construction of the revenue laws of this state," and the term "revenue laws" includes laws relating to the disbursement of the revenue and its preservation. *Regal-Tinneys Grove Spec. Rd. Dist. of Ray County v. Fields,* 552 S.W.2d 719, 720–721[1] (Mo.banc 1977); *State ex rel. Attorney General v. Adkins,* 221 Mo. 112, 114, 119 S.W. 1091, 1093[2] (1909). We consider *State ex rel. Pullum v. Cons. Sch. Dist. No. 5, Stoddard County,* 361 Mo. 114, 233 S.W.2d 702 (1950), similar enough to this case to be persuasive that a construction of a revenue law is required. See also 1964 Wash.U.L.Q., §§ 3.040, 3.050, pp. 527–529.

Because we have no jurisdiction of the appeal, we can take no action beyond transferring the appeal to the Supreme Court. Mo.Const. art. V, § 11 (as amended 1970); *Winslow v. Sauerwein,* 365 Mo. 269, 274, 282 S.W.2d 14, 17[4] (1955); *Starr v. Mitchell,* 231 S.W.2d 299, 301[4] (Mo.App.1950). Accordingly, the clerk of this court is directed to transfer this cause forthwith to the clerk of the Supreme Court of Missouri.

All concur.

6. See, e. g., Goldstein, Inequalities in School Financing: A Critical Analysis of Serrano v. Priest And Its Progeny, 120 U.Pa.L.Rev. 504, 507–534 (1972).