**STATE ex rel. Blaine LACK, et al., Respondents,**

v.

**Ralph MELTON, et al., Appellants.**

**STATE ex rel. Robert L. PAYNE, Respondent,**

v.

**Ralph MELTON, et al., Defendants,**

**John A. Watkins, Intervenor-Appellant.**

No. 66860.

Supreme Court of Missouri, En Banc.

June 25, 1985.

John A. Watkins, Greenfield, for appellants and intervenor-appellant.

Thomas R. Schwarz, Jr., Counsel State Tax Com'n, Jefferson City, Robert L. Payne, Pros. Atty., Greenfield, for respondents.

BILLINGS, Judge.

This appeal involves consolidated cases arising out of Dade County, Missouri. In case one the trial court issued a writ of mandamus ordering members of the Dade County Commission, formerly the Dade County Court, to pay the salary of an employee of the Dade County Assessor's office. In case two the trial court permanently enjoined the use of county funds to compensate the attorney representing the county commission in case one. The Missouri Court of Appeals, Southern District, consolidated the cases and transferred them to this Court to construe revenue laws. Mo. Const. art. V, § 3 (1982). We affirm the writ of mandamus and reverse the injunction.

■ We initially note that exclusive appellate jurisdiction does not properly lie in this Court. We have that jurisdiction in all cases involving "the construction of revenue laws of this state." Id. The construction of a revenue law must itself be in issue. Cf. *City of Willow Springs v. Missouri State Librarian,* 596 S.W.2d 441

(Mo. banc 1980). This includes laws relating to the disbursement and preservation of revenue. *State ex rel. Niess v. Junkins,* 563 S.W.2d 173, 177 (Mo.App.1978). To fall within our exclusive jurisdiction the revenue law must be directly and primarily involved. *Robb v. Estate of Brown,* 518 S.W.2d 729, 732 (Mo.App.1974).

■ Here, the mandamus proceeding involves the proper manner by which a previously approved budget may be allocated. Specifically it involves the procedure to fill job vacancies within an approved budget that funds a job position. The injunction suit involves the authority of a county governing body. The use of revenue is a necessary but indirect element of that authority but the primary construction issue is the scope of statutory authority to employ special counsel. Neither case directly and primarily involves the construction of a revenue law. However, we retain the cases and adjudicate the merits as a matter of judicial economy. *See State v. Davis,* 653 S.W.2d 167 (Mo. banc 1983); *State v. Higgins,* 592 S.W.2d 151 (Mo. banc 1979), *appeal dismissed,* 446 U.S. 902, 100 S.Ct. 1825, 64 L.Ed.2d 254 (1980).

### MANDAMUS

This proceeding is the culmination of a dispute between the county commission and the assessor. On September 26, 1983, the assessor hired Linda Thieman as a probationary clerk to fill a vacant position. The 1983 budget included enough money to fund the position. The assessor requested the county clerk present a warrant to the county commission to pay Thieman's salary for the days she worked during September. On October 1, 1983, the Clerk presented the warrant, but the commission refused to issue it because they had not given *their* approval of Ms. Thieman's selection by the assessor. Thieman worked, without pay from the county, for the assessor from September 16, 1983, through December 31, 1983.

■ We must interpret for the first time § 137.715, RSMo Supp.1984:

**Clerks and deputies, appointment, compensation, how paid.**—Each county assessor shall, subject to the approval of the governing body of the county, appoint the additional clerks and deputies that he or she deems necessary for the prompt and proper discharge of the duties of his office. A portion of the salaries of the clerks and deputies hired by each county assessor shall be paid by the state in accordance with sections 137.710 and 137.750, and the remainder of the salaries for such clerks and deputies shall be paid by the county in which they are employed.

This Court has been guided by well established rules of statutory construction. *Sermchief v. Gonzales,* 660 S.W.2d 683 (Mo. banc 1983). "The primary object of statutory interpretation is to ascertain the intent of the legislature from the language used, and to give effect to that intent. In doing so we consider the words used in their plain and ordinary meaning." *Springfield Park Central Hospital v. Director of Revenue,* 643 S.W.2d 599 (Mo. 1983). *See Sermchief, supra. Brown Group, Inc. v. Administrative Hearing Commission,* 649 S.W.2d 874, 881 (Mo. banc 1983); *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246 (Mo. banc 1981); *Bank of Crestwood v. Gravois Bank,* 616 S.W.2d 505, 510 (Mo. banc 1981); *State v. Kraus,* 530 S.W.2d 684 (Mo. banc 1975). The legislature is presumed to intend to enact a just law that serves the welfare of its constituents rather than an absurd law. *State ex rel. McNary v. Hais,* 670 S.W.2d 494 (Mo. banc 1984); *Maryland Casualty Co. v. General Electric Co.,* 418 S.W.2d 115 (Mo. banc 1967); *Tribune Publishing Co. v. Curators of University of Missouri,* 661 S.W.2d 575 (Mo.App.1983).

■ Two interpretations of § 137.715, RSMo Supp.1984, have been advanced. The county commission suggests it must specifically approve each person hired by the assessor's office. The assessor recognizes the commission is authorized to approve a total budget for his office but says he has the final decision concerning who is employed in his office. We agree with the

assessor. The commission's position would permit that body to dictate to county office holders (assessor, auditor, collector, clerk, treasurer, recorder of deeds, and certain prosecuting attorneys) the particular individuals who could be hired to work in their respective offices. We say this because similar budgetary control language as that found in § 137.715, RSMo Supp.1984, can be found in statutes governing employment of employees in all county offices. Here, the commission approved a 1983 budget for the assessor's office. That budget did not specify specific salaries, employees or number of employees. We are of the opinion that the legislature did not intend to subjugate the autonomy of the assessor's office to the political whims of the county commission via an "advice and consent" stratagem. The writ of mandamus directing the commission to issue a warrant to pay Ms. Thieman involved a ministerial act that could not be properly refused. *See State ex rel. Karmi v. Von Romer,* 562 S.W.2d 112 (Mo.App.1978). We affirm.

## INJUNCTION

■ This suit stems from the county commission's attempt to pay its counsel in the mandamus proceeding. The original petition in mandamus was filed by the prosecuting attorney of Dade County. The county commission generally relies on the prosecuting attorney to represent it. This peculiar situation led the county commission to hire outside counsel.[1]

Section 56.250, RSMo Supp.1984, authorizes the county commission to employ special counsel to represent the county. A previous version of the statute was interpreted in *County of St. Francois v. Brookshire,* 302 S.W.2d 1 (Mo.1957). *Brookshire* developed from a county court's refusal to issue a warrant to increase the pay of a

---

1. We note it was the same prosecuting attorney who initiated the suit for an injunction.

1. It should be noted at the outset that respondent unnecessarily engaged in this litigation. When respondent presented the county court with the warrant for paying Thieman, one of the judges had some reservations about signing the warrant because a full panel was not present.

---

deputy circuit clerk. A circuit court judge ordered payment but the county court judges refused. They were held in contempt and hired an attorney to represent them in the contempt proceedings. In *Brookshire* the Court explained that county courts can only operate under powers conferred by statute and members of a county court cannot use county funds to employ attorneys in private matters. Contempt proceedings are individual and beyond the statutory grant of authority. The Court noted that "it may be assumed that the county had an interest in whether the increased salary should be paid to the deputy clerk." *Id.* at 3. Presumably, county funds could have been used in the suit to issue the warrant. That is the current situation. The county commission members were sued in their official as well as individual capacity. Dade County had an interest in the result of the mandamus proceeding. The injunction was improperly issued and is reversed.

RENDLEN, C.J., HIGGINS, BLACKMAR and DONNELLY, JJ. and SATZ, Special Judge, concur.

WELLIVER, J., dissents in part and concurs in part in separate opinion filed.

GUNN, J., not sitting.

WELLIVER, Judge, dissenting in part and concurring in part.

I respectfully dissent as to case one.

The issue in the first case is whether the Dade County assessor could hire an employee, who was ultimately to serve as a deputy assessor, without first having received the express approval of the Dade County Court (now Commission).[1] The principal opinion concludes that the county

---

He told respondent to wait until the full panel could vote on the warrant the following week. Respondent has not provided a satisfactory explanation for why he could not wait a week until all three judges could vote on the warrant, at which time the warrant might have been issued. Instead, respondent opted for the more lengthy and costly course of litigation.

court need not approve the assessor's hiring of an employee (deputy assessor) if the county court has already approved a budget.

The issue herein should have been easily resolved by following the plain language of § 137.715, RSMo Cum.Supp.1984. The legislature could not have expressed its intent more clearly than it did by requiring "the approval of the governing body of the county." A similar requirement for prior approval can be found in other statutes. *See* § 54.215, RSMo Cum.Supp.1984; § 54.-230, RSMo 1978; § 55.100, RSMo 1978; § 55.110, RSMo 1978. Where the legislature has not considered prior approval necessary, it has omitted this language and allowed county officers to hire deputies and clerical help without requiring approval of the governing body. *See* § 52.280, RSMo 1978. Although not controlling prior authority, a number of Attorney General opinions demonstrate the State's strict compliance with the language. No. 60, Paul, 5–8–77; No. 413, Holman, 9–18–70; No. 124, Davis, 5–2–67. No one disputes that the Dade County Court was the governing body. Equally undisputed is the fact that the assessor did not receive the approval of the county court before hiring Linda Theiman. The assessor, therefore, did not comply with the unambiguous requirement of the statute.

The principal opinion disregards § 137.-715 when it holds that the approval of a budget by the county court waived that body's right to approve or reject a subsequently hired employee.[2] A number of reasons illustrate why such a conclusion is unsupportable. First, the principal opinion overlooks the simple fact that the county court examines and may revise the budget pursuant to wholly separate statutory provisions. *See e.g.*, §§ 50.600, 50.610, RSMo 1978. And, if not otherwise provided by law, the county court may set the salaries of county employees. § 50.540.4, RSMo 1978. The salaries for county assessors,

but not their employees, are governed by the provisions of chapter 53.

Second, the pertinent language in § 137.-715 reflects a deliberate choice by the legislature to vest the right of approving appointments in the county court. Prior to § 137.715, county assessors were not required to seek the approval of the county court. *See* § 10946, RSMo 1939; § 53.060, RSMo 1949. However, specific statutes governed the number of deputies that could be hired and these statutes also provided for the allowable salaries. *See e.g.*, § 53.070, RSMo 1969; § 53.080, RSMo 1959; § 53.090, RSMo 1969; § 53.095, RSMo 1959. The legislature subsequently altered a number of these statutes. *See* § 53.071, RSMo 1978 *et seq. See also* § 53.065, RSMo Cum.Supp.1984. In effecting these and other changes, the legislature omitted any provision for the assessor's staff. This omission was addressed in an Attorney General opinion, where it was urged:

> Section 53.060, RSMo, recognizes the authority of the assessor to appoint deputies by providing that the deputy assessors shall take the same oath and have the same power and authority as the assessor himself and that the assessor is responsible for the official actions of his deputies. Section 137.710, ... is based on the premise that the county shall provide funds for payment of deputy assessors.

While it is our view that the authority of the assessor to appoint a deputy and to employ clerical assistance is not clearly and specifically provided for by statute after the effective date of Senate Bill No. 277, and is thus a proper subject for legislative action; it is also our view that the provisions which we have noted indicate that it was not the legislative intent to preclude the assessor from hiring deputies and assistants. * * * We believe that the confusion which has resulted from the changes made by Senate Bill

---

**2.** Under such an interpretation, the assessor could hire employees right before the budget is approved and then after the approval of the budget he or she could replace all the employees without the approval of the county court.

No. 277 simply indicates careless drafting combined with an apparent thought on the part of the drafters that the rearrangement of the subject matter covered the entire question of the payment of such employees as well as the authority to hire such employees.

No. 211, Ratcliff, 12–22–77. The party's position was affirmed by the Office of the Attorney General. Three years later, in 1980, the legislature passed § 137.715. The statute apparently has two functions. It addresses the problem expressed in the Attorney General opinion No. 211, *supra,* by allowing the assessor to appoint a staff, but it conditions that right on the approval of the governing body. It also establishes that such officers are to be paid by both county and state funds pursuant to §§ 137.710, 137.750. The statute, therefore, provides both a limited grant of authority to the assessor and a system for compensation. To suggest that the approval of the budget has anything to do with the *approval of appointments authorized under* § 137.715 is to ignore the scheme the legislature during the past fifty years has worked to establish.

Third, the principal opinion errs when it holds that "[w]e are of the opinion that the legislature did not intend to subjugate the autonomy of the assessor's office to the political whims of the county commission via an 'advice and consent' stratagem." Quite the contrary, the legislature undoubtedly did not want to allow the establishment of a patronage system by the assessor without any concern for need or merit—a problem alleviated by requiring the approval of the governing body.

Fourth, the principal opinion fails to recognize that when the county commission acts as the governing body it performs many functions comparable to that of overseeing hirings. *See e.g.,* § 55.010, RSMo 1978; § 55.030, RSMo 1978; § 55.120, RSMo 1978; § 55.150, RSMo 1978. For example, the county commission, and not the assessor, establishes a system or method of bookkeeping to be employed by the

county assessor. § 137.395, RSMo 1978. Such statutes, I believe, indicate a clear legislative intent that county commissions maintain both a close and direct role in supervising all facets of running the county. Overseeing the hiring of both agents and assistants is just such a task entrusted to the county commission. *E.g.* § 50.753, RSMo 1978.

In view of the efforts devoted during recent years to the upgrading of county governing bodies to their newly recognized status as "county commissions," [3] it is especially unfortunate that they must so soon find themselves so effectively stripped by the judiciary of their governing power.

I would quash the writ of mandamus as to case one.

I concur as to case two.

---

3. § 59.010, RSMo Cum.Supp.1984.