**Mary L. KUYPER, Plaintiff–Appellant,**

v.

**STONE COUNTY COMMISSION,**
Defendant–Respondent.

No. 74442.

Supreme Court of Missouri,
En Banc.

Sept. 22, 1992.

Robert L. Anderson, Kimberling, for plaintiff-appellant.

Robert B. Fuchs, Sikeston and Thomas W. Rynard and Terry C. Allen, Jefferson City, for defendant-respondent.

ROBERTSON, Chief Justice.

In this case we decide whether the county commission of a county of the third classification may alter the salary of a person hired by the county assessor after the start of the county's fiscal year. The trial court found that the Stone County Commission (the Commission) had authority to lower the salary of the assessor's new employee.

On review, the Court of Appeals, Southern District, examined its jurisdiction and determined that transfer to this Court was appropriate on two grounds. First, this Court has "exclusive appellate jurisdiction" over the case because it involves "the construction of the revenue laws of this state." Mo. Const. art. V, § 3. Second, the court of appeals entered an order transferring the case to this Court because of the general interest and importance of the authority of a county commission to control the expenditure of funds appropriated to the county assessor. The court of appeals did not render an opinion on the merits prior to entering its order of transfer.

We are obliged to consider our jurisdiction before proceeding. Jurisdiction, of course, is the authority of a court to hear and determine the controversy presented in a case. *Sullenger v. Cooke Sales & Service Company*, 646 S.W.2d 85, 88 (Mo. banc 1983).

The Supreme Court is a court of limited jurisdiction. The Constitution limits this Court's "exclusive appellate jurisdiction" to those categories of appeals listed in article V, section 3. Included within this Court's exclusive appellate jurisdiction are cases requiring "construction of the revenue laws of this state."

█ In transferring the appeal in this case, the court of appeals relied on cases of this Court holding that where the law in question is (1) a state law; (2) relates to the subject matter of revenue; (3) directly and primarily concerns revenues; and (4) relates to "the disbursement of the revenue and its preservation, as well as provisions relating to the assessment, levy, and collection of [revenue]," the law under scrutiny is a revenue law, and exclusive appellate jurisdiction to construe that law lies in this Court. *State ex rel. Hadley v. Adkins*, 221 Mo. 112, 119 S.W. 1091, 1093 (1909); *accord State ex rel. Martin v. Childress*, 345 Mo. 495, 134 S.W.2d 136, 138 (1939), and *State ex rel. Strong v. Cribb*, 364 Mo. 1122, 273 S.W.2d 246, 247 (1954). Without question, the court of appeals read the cited cases properly in determining whether to transfer the appeal to this Court.

In 1983, this Court decided *Buechner v. Bond*, 650 S.W.2d 611 (Mo. banc 1983). That case counsels:

[t]he words used in constitutional provisions are interpreted so as to give effect to their plain, ordinary and natural meaning. The plain, ordinary and natural

meaning of words is that meaning which the people commonly understood the words to have when the provision was adopted. The commonly understood meaning of words is derived from the dictionary. [citations omitted.]

*Id.* at 613. Employing these canons of constitutional construction, *Buechner* defines "revenue" as " 'the annual or periodical yield of taxes, excises, customs, duties, and other sources of income that a nation, state or municipality collects and receives into the treasury for public use.... ' Webster's Third New International Dictionary 1942 (1964)." *Id.*

*Buechner's* definition of revenue is consistent with the unambiguous text of the constitution granting this Court exclusive, though limited, appellate jurisdiction. The text of article V, section 3, limiting this Court's exclusive appellate jurisdiction to construction of "revenue" laws speaks to the seriousness with which the people of this state view the efforts of government to reach into their pockets and pocketbooks. By their unambiguous language, the people of this state intend their highest appellate court to determine the meaning and validity of laws by which the tax collector exacts tribute for the support of government. Had the people been as concerned with the expenditure of funds already properly within the state's coffers, the constitutional language would not have been limited to "revenue."

■ Section 50.540, RSMo 1986,[1] is at issue in this case. Section 50.540 does not authorize county government to impose or collect a tax. Instead, that section establishes a procedure by which county government may plan expenditures of anticipated tax funds collected pursuant to extant revenue laws. Section 50.540 does not authorize a tax, excise, custom, duty or other source of income; it is not a revenue law. Therefore, this case does not fall within this Court's exclusive appellate jurisdiction. To the extent that *Adkins, Cribb* and *Childress* follow a contrary reading of the constitution and, in so doing, expand this Court's jurisdiction beyond the plain meaning of article V, section 3, they are overruled.

■ The court of appeals also transferred the appeal to this Court as a matter of general interest or importance. Article V, section 10, permits the court of appeals, "after opinion," to transfer a case to this Court because of general interest or importance. An opinion is a "statement by a judge or court of the decision reached in regard to a cause tried or argued before them expounding the law as applied to the case, and detailing the reasons upon which the judgment is based." Black's Law Dictionary, 985 (5th ed. 1979). Rule 83.02 also permits the court of appeals to transfer "a case in which an opinion has been filed in the district of the court of appeals" to this Court "because of general interest or importance of a question involved in the case." Rule 83.02 and article V, section 10, are consistent, as they must be.

In this case, the court of appeals filed a memorandum of law and fact. That memorandum did not contain the court's judgment of the merits of the trial court's decision. The memorandum is not an opinion. The court of appeals' attempt to transfer the matter to this Court on the basis of general interest or importance fails under article V, section 10, and Rule 83.02 since the court of appeals did not render an opinion prior to entering its order of transfer.

■ This Court is without jurisdiction to consider the merits of the appellant's appeal in this case on the grounds set forth by the court of appeals. This Court may not obtain jurisdiction of the subject matter of this appeal by consent, waiver, or in the interest of judicial economy. We are mindful of cases of recent vintage in which this Court has retained cases before it in which it has no jurisdiction "as a matter of judicial economy." *See, e.g., Pace v. City of Hannibal,* 680 S.W.2d 944, 946 (Mo. banc 1984); *State ex rel. Lack v. Melton,* 692 S.W.2d 302, 304 (Mo. banc 1985); *State v. Davis,* 653 S.W.2d 167 (Mo. banc 1983); *State v. Higgins,* 592 S.W.2d 151 (Mo. banc

1. All statutory references are to RSMo 1986, unless otherwise indicated.

1979). The jurisdiction of this Court may not be expanded beyond its constitutional limits, even in the name of judicial economy. To the extent that cases of this Court hold otherwise, they, too, must be overruled.

■ Article V, section 10, permits this Court to order transfer of a case *before* opinion of the court of appeals "because of general interest or importance of a question involving the case." This case involves such an important question: Whether a county commission may determine the salary of a person hired by the county assessor with funds already budgeted to the assessor by the county commission. On our own motion, we transfer this case to this Court under article V, section 10, because of "the general interest or importance of a question involved in the case." The judgment of the trial court awarding appellant damages is reversed.

### I.

The Stone County Commission adopted a budget for the county's fiscal year 1989. That budget took effect on January 1, 1989. Section 50.010. Within that budget, the Commission appropriated funds for the operation of the county assessor's office and specifically for the payment of employees within that office. The assessor's budget as finally approved by the Commission included a line item appropriation for "Deputies–Clerks Salaries" in the amount of $83,840.00.

On February 21, 1989, Raper hired Kuyper as a full-time employee of the assessor's office and agreed to pay her $800 per month for the first month and $825 for each month thereafter. Raper's office submitted pay warrants to the county requesting checks to Kuyper in those amounts for February and March respectively.

That same day the Stone County Commission met and adopted a policy that "employees hired by the county for office clerical duties will be hired at $650 per month with no built-in raise." When the assessor submitted Kuyper's pay voucher on February 21 seeking $800 from the county, the county adjusted Kuyper's pay to $650 per month, presumably in accordance with the Commission's newly-adopted policy. Kuy-per protested. Several meetings with the Commission followed. The Commission, however, refused to adjust Kuyper's pay. Kuyper sued the Commission to recover the difference between the salary Raper promised and the amount the Commission paid.

The trial court heard evidence and rendered a judgment in favor of Kuyper in the amount of $150. The trial court reasoned that while Kuyper had expected to be paid $800 her first month, the Commission had reduced her starting salary to $650. Accordingly, she was entitled to "the difference of [the] $800 and $650 salaries for the time until plaintiff had actual notice of her approved salary by the Commission on February 24, 1989, of one (1) month or a difference of $150." Kuyper appealed.

### II.

■ Article VI, section 7 of the Missouri Constitution requires the election of a county commission in non-charter counties. The commission "shall manage all county business as prescribed by law." *Id.* Stone County does not have a charter form of government. This Court has consistently held that "outside of the management of the fiscal affairs of the county, such courts [commissions] possess no powers except those conferred by statute." *State ex rel. Floyd v. Philpot*, 364 Mo. 735, 266 S.W.2d 704, 710 (1954).

Section 137.715 provides: "Each county assessor shall, subject to the approval of the governing body of the county, appoint the additional clerks and deputies that he or she deems necessary for the prompt and proper discharge of the duties of his office." In *State ex rel. Lack v. Melton*, 692 S.W.2d 302 (Mo. banc 1985), the Dade County Commission claimed the right specifically to approve each person hired by the assessor. When the assessor failed to obtain the commission's approval prior to hiring an employee, the commission refused to pay the new employee's salary. This Court held that the assessor, not the county commission, had final authority to hire employees of the assessor's office. "We are of the opinion that the legislature

did not intend [in Section 137.715] to subjugate the autonomy of the assessor's office to the political whims of the county commission via an 'advice and consent' stratagem." *Id.* at 305.

The Commission argues that because Kuyper is an employee of Stone County, the Commission controls her rate of pay, citing Section 50.540.4. Section 50.540.4 provides in pertinent part: "The budget officer shall provide in his recommendations, and the county commission shall fix all salaries of employees, other than those established by law." Lifted from context, the quoted portion of Section 50.540.4 appears to support the Commission's position. When one reads that lone sentence in the company of the entire statute, however, the argument crumbles.

Section 50.540 defines the lengthy budgetary process by which a non-charter county of the third classification creates, refines, and reviews the county budget for the *ensuing* fiscal year. The requirements of Section 50.540.4 are but one stage in that process.

The annual budget process begins when each department of county government submits an estimate of its expenditure requirements and revenue collections to a county budget officer. Section 50.540.1. Following a public hearing in the presence of the county commission (in pertinent counties), the budget officer prepares the budget document for the entire county government. This document sets out the proposed income and expenditures for the next fiscal year. Section 50.540.4; Section 50.540.5(3); Section 50.550. Finally, the county commission considers the budget document, fixes salaries as permitted by law, makes changes as permitted by Section 50.610, and issues an appropriation order. *Id.* The appropriation order grants the county's public officers authority to expend the funds expressly set apart for each officer's use in meeting the expenses of his or her public office. In essence, the appropriation order puts "the budget into effect" for the ensuing year. Section 50.590(3).

Section 50.540.4 is of no assistance to the Commission. The functions and powers of the Commission, as defined in Section 50.-540, do not have an immediate or present effect. Rather, the statute focuses on the process by which the county prepares its annual budget for the *ensuing* year and enters its broad appropriation order. Absent exigent circumstances, the Commission's power to affect salaries exists only within the framework of the budgetary process. Once appropriations are fixed and the appropriation order entered, the Commission may not control the spending decisions of the county assessor made within appropriations to that office.

■ In this case, the fiscal year had already begun when Raper hired Kuyper as a full-time employee. The assessor's office hired and intended to pay Kuyper using funds appropriated to that office for "Deputies–Clerk Salaries" within the 1989 fiscal year. The assessor's salary agreement with Kuyper did not cause the assessor to expend more funds for salaries of personnel than were previously appropriated by the Commission.

■ Within that fiscal year, an assessor may expend funds appropriated to his or her office as he or she sees fit, provided the expenditures are within the limits and for the purposes set out in the appropriation order. The assessor may also hire additional clerks and deputies as he or she deems necessary. When the assessor expends funds previously appropriated to his or her office, for the compensation of a new employee, the assessor assigns a corresponding salary to that employee. This resulting designation of salary is a valid exercise of the spending authority reserved to the county assessor.

We hold, therefore, that the Commission had no authority to lower the individual salary of an employee hired by the assessor when the assessor intended to pay that employee with funds appropriated to the assessor's office for the fiscal year in which the assessor hired the new employee.

## III.

Accordingly, the judgment of the trial court is reversed and the cause is remanded for entry of judgment in favor of Mary

L. Kuyper. Costs assessed against the Stone County Commission.

All concur.