

*In the*

*Missouri Court of Appeals*

*Western District*

| | | |
|---|---|---|
| **CHRISTOPHER ESTES,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD76419** |
| | ) | |
| **v.** | ) | **OPINION FILED:  April 22, 2014** |
| | ) | |
| **COLE COUNTY OF MISSOURI, ET AL.,** | ) | |
| | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Byron L. Kinder, Judge

Before Division Three:  Thomas H. Newton, Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

The Assessor of Cole County, Christopher Estes, ("Assessor"), appeals from the Circuit Court of Cole County's judgment in favor of Cole County ("County") and individual Cole County Commissioners (the "County Commission").  The trial court found that the County Commission is legally authorized to transfer funds from the Cole County Assessment Fund ("Assessment Fund") into the County's general revenue fund to pay for computer and information system services ("Technology Expenses") provided by the County and used by the Cole County Assessor's Office ("Assessor's Office").  The

Assessor argues that the trial court's judgment was in error because expenditures from the Assessment Fund must first have been authorized by the Assessor's biennial assessment maintenance plan ("Assessment Maintenance Plan") and because Technology Expenses are not eligible to be included in an Assessment Maintenance Plan.

Because we conclude that the County Commission had the statutory authority to pay for Technology Expenses incurred by the Assessor's Office from the Assessment Fund, we affirm.

## Factual and Procedural History[1]

In June 2012, the County finance office sent the Assessor an invoice in the amount of $39,411 for Technology Expenses. The amount of the invoice was determined by an annual cost allocation study performed for the County by Maximus, Inc.[2] The study allocated a percentage of the County's fiscal year 2010 Technology Expenses to the Assessor's Office.

The Assessor refused to authorize payment of the invoice and claimed that Technology Expenses are not authorized expenditures from the Assessment Fund.[3] On January 2, 2013, the County Commission terminated computer and information system services to the Assessor's Office.

On January 3, 2013, the Assessor filed a motion for a temporary restraining order in the Circuit Court of Cole County. The trial court entered a temporary restraining order

---

[1] "On appeal from a court-tried matter, we view the facts in the light most favorable to the court's judgment." *Short v. S. Union Co.*, 372 S.W.3d 520, 524 n.2 (Mo. App. W.D. 2012).

[2] The trial court found that "this procedure is standard in the industry and an entirely proper measurement for recovering costs."

[3] The Assessor and the County Commission have been engaged in a dispute for several years regarding disbursements from the Assessment Fund to reimburse the County for Technology Expenses allocated to the Assessor's Office. Despite the dispute, the Assessor paid annual invoices received from the County until 2012.

2

requiring the County to restore computer and information system services to the Assessor's Office.

On the same day, the Assessor filed a verified petition for injunction and for declaratory relief which requested the trial court to:

> [I]ssue preliminary and permanent injunctions enjoining Respondents from terminating the Assessor's access to, and use of, the Cole County mainframe computer system and further enjoining Respondents from otherwise failing to provide the Assessor with such computer equipment as is necessary to carry out the duties and functions of the office of the Assessor and as is provided to other office holders in Cole County.

Further, the Assessor asked that the trial court declare: (1) "that the [2012] invoice is invalid and enforceable [sic]"; (2) "that there is no legal authorization to transfer funds from the Cole County Assessment Fund to the Cole County General Revenue Fund in payment of the [2012] invoice"; (3) "that the transfers made from the Cole County Assessment Fund to the Cole County General Fund in 2008, 2009, 2010, and 2011 . . . were unauthorized and unlawful"; (4) "that Respondents have no discretion to require the Assessor to reimburse Respondents for the indirect costs represented in the [2012] invoice"; and (5) "that Respondents have no discretion to withhold basic administrative services (including use of the Cole County mainframe computer system) from the Assessor as a sanction for not paying the unlawful [2012] invoice." Further, the Assessor asked the trial court to reverse the transfers made in 2008, 2009, 2010, and 2011.

Following a bench trial and briefing by the parties on the legal issues presented by the dispute, the trial court issued its judgment in favor of the County and the County

3

Commission ("Judgment"). The trial court concluded that section 137.725[4] permits the County to pay all of the Assessor's costs and expenses from the Assessment Fund, including the Technology Expenses allocated to the Assessor's Office. The trial court also found that the Assessor has no authority over expenditures from the Assessment Fund and that the County Commission did not need the Assessor's permission to transfer funds from the Assessment Fund to reimburse for Technology Expenses allocated to the Assessor's Office.

The Assessor appeals.

## Standard of Review

"The judgment of the trial court will be affirmed 'unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The Assessor's points on appeal concern whether the trial court erroneously declared and applied the law.

## Analysis

The Assessor asserts two points on appeal. In his first point, the Assessor argues that the County Commission has no authority to make expenditures from the Assessment Fund unless the expenditures were included in the Assessment Maintenance Plan prepared by the Assessor pursuant to section 137.115.1. In his second point, the Assessor argues that Technology Expenses are not eligible for inclusion in an Assessment

---

[4] All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

4

Maintenance Plan pursuant to section 137.750.4 because the expenses include overhead and utility costs; salaries and benefits for personnel not directly employed by the Assessor; and computer software, hardware, maintenance, and leased equipment costs.

Inherent in both of the Assessor's points on appeal is the premise that expenditures from an Assessment Fund are statutorily limited to expenses permissibly and actually included in an Assessment Maintenance Plan. We thus combine discussion of the Assessor's points on appeal.

The assessor of each county in Missouri, including the city of St. Louis, has an annual obligation to "make a list of all real and tangible personal property taxable" and to assess all real and personal property located in the county. Section 137.115.1. Because the State benefits from some of the collected taxes, the State is subject to an obligation to reimburse "a portion of the costs and expenses of the assessor of each county . . . incurred . . . in performing all duties necessary to assess and maintain equalized assessed valuations of real property, making real and personal property assessments and preparing abstracts of assessment lists." Section 137.750.1. The State's obligation to reimburse "a portion of costs and expenses" is conditioned on a county having an assessment maintenance plan approved pursuant to section 137.115. Section 137.750.2.

Section 137.115.1 requires a county assessor "on or before January first of each even-numbered year" to "prepare and submit a two-year assessment maintenance plan to the county governing body and the state tax commission for their respective approval or

modification."[5]   When a county seeks reimbursement from the State for costs and expenses incurred in connection with the assessment process, the State "certif[ies] that the county requests for reimbursement are consistent with the [Assessment Maintenance Plan] approved by the state tax commission as provided in section 137.115" and then "pay[s] the state's share out of funds appropriated for that purpose."  Section 137.750.3.

The State's section 137.750 reimbursement must be deposited into an Assessment Fund.  Section 137.750.2 provides that:

> [A] county which seeks or will seek reimbursement under any provision of this section or section 137.720 shall establish a fund to be known as the "Assessment Fund," to be used solely as a depository for funds received by the county . . . pursuant to this section and sections 137.037 and 137.720, from the general revenue fund of the county or other sources for the purpose of funding the costs and expenses incurred in implementing an assessment and equalization maintenance plan approved under section 137.115 and for assessing real and personal property.

Section 137.750.2 plainly addresses *deposits* into an Assessment Fund, and anticipates several sources of deposits:  (i) the State reimbursement anticipated by section 137.750; (ii) funds received pursuant to section 137.037, a statute which authorizes a county to schedule an election to approve a levy to pay a private contractor to reevaluate real property subject to taxation, or "to provide funding for that portion of all costs of the assessor's office which would otherwise be paid from county general revenues;" (iii) funds received pursuant to section 137.720, a statute which requires the deposit of a percentage of all ad valorem property taxes collected for other taxing authorities in a county, and which states that a "county may also provide additional moneys for the

---

[5] The process for approval or modification of an Assessment Maintenance Plan is outlined in section 137.115.1.

6

fund"; (iv) funds from the general revenue fund of the county; (v) funds from "other sources."[6]

While section 137.750 discusses the source of *deposits* into an Assessment Fund, section 137.725 governs *disbursements* from an Assessment Fund. Section 137.725 provides:

> The salary of the assessor, the clerks, deputies, employees and *all costs and expenses of the assessor shall be paid* monthly or semimonthly *by the county from the assessment fund* established under section 137.750.

(Emphasis added.)

The Assessor argues that although section 137.725 permits the County to pay "all costs and expenses" of the Assessor from the Assessment Fund, we are required to read section 137.725 *in pari materia* with section 137.750 and thus limit the costs and expenses which can be paid from the Assessment Fund to those the State is obligated to reimburse. The Assessor further reasons that since State reimbursement under section 137.750 requires an approved Assessment Maintenance Plan, only costs and expenses included in an approved Assessment Maintenance Plan can be paid from an Assessment Fund. Since the approved Assessment Maintenance Plan prepared by the Assessor did not include the Technology Expenses, the Assessor argues that the expenses cannot be paid from the Assessment Fund. There are several difficulties with the Assessor's argument.

---

[6] Our independent research has identified several other statutory sources for deposits into an Assessment Fund, including Sections 137.082, 137.106, 137.721, and 137.722.

First, the plain language of section 137.725 does not support the Assessor's position. "The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider the words used in the statute in their plain and ordinary meaning." *State v. Kraus*, 530 S.W.2d 684, 685 (Mo. banc 1975). "[W]here the language of a statute is plain and admits of but one meaning there is no room for construction." *Cummins v. Kansas City Pub. Serv. Co.*, 66 S.W.2d 920, 931 (Mo. banc 1933). Here, section 137.725 authorizes Cole County to pay *all* costs and expenses of the Assessor's Office from the Assessment Fund. The word "all" is unqualified and unambiguous. Affording the word "all" its plain and ordinary meaning requires us to conclude that Technology Expenses allocated to the Assessor's Office are "costs and expenses" properly paid from the Assessment Fund. We are thus neither permitted nor required to construe section 137.725 by reference to section 137.750. "[W]hen a statute is clear and unambiguous, extrinsic aids to statutory construction cannot be used." *Blue Springs Bowl v. Spradling*, 551 S.W.2d 596, 599 (Mo. banc 1977). Though section 137.725 refers to section 137.750, it does so only to identify the Assessment Fund from which "all costs and expenses" of the Assessor are to be paid and not to modify the plain and ordinary meaning of the phrase "all costs and expenses."

Second, section 137.750 identifies several sources for deposits into an Assessment Fund other than the State reimbursement anticipated by section 137.750. Because the legislature plainly anticipated that an Assessment Fund may contain deposits from sources other than a section 137.750 State reimbursement, it would be illogical to

8

interpret section 137.025 as limiting the "costs and expenses" that can be paid from an Assessment Fund to only those costs and expenses the State is obligated to reimburse.

Third, section 137.750 anticipates that the Assessor will incur "costs and expenses" that are ineligible for reimbursement by the State. Section 137.750.4(1) provides that "[t]he following costs and expenses *shall not qualify* for state reimbursement or reimbursement from tax moneys withheld from political subdivisions," then proceeds to list several categories, including insurance premiums, the cost to purchase vehicles, depreciation, interest, building maintenance, fuel and utility costs, and other overhead expenses. (Emphasis added.) Section 137.750.4(2) provides that certain other "costs and expenses" will be reimbursable by the State, but only if included in an Assessment Maintenance Plan. Section 137.750 plainly recognizes that an Assessor's Office will incur "costs and expenses" that are not reimbursable by the State. Yet, in describing a County's authority to disburse from an Assessment Fund, the legislature used the phrase "*all* costs and expenses of the assessor," suggesting the intent to permit payment of costs and expenses from an Assessment Fund even if they are not eligible for State reimbursement.[7]

We conclude that the trial court did not err by holding that section 137.725 gave the County Commission the authority to pay for Technology Services by withdrawing funds from the Assessment Fund for deposit into the County's general revenue fund.

---

[7] This discussion dispenses with the Assessor's second point on appeal which argued that the Technology Expenses could not be paid from the Assessment Fund because they were ineligible for State reimbursement and were thus ineligible for inclusion in the County's Assessment Maintenance Plan.

9

The trial court also concluded that the Assessor has no statutory authority to authorize expenditures from the Assessment Fund and thus no authority to prevent the County Commission from transferring money from the Assessment Fund for payment of costs and expenses of the Assessor's Office. This finding was necessitated by the Assessor's position at trial that the Assessor has *sole* authority to determine disbursements from the Assessment Fund.[8] In his Brief on appeal, the Assessor again argues that the County Commission usurped the Assessor's power to control expenditures from the Assessment Fund. We disagree.

Section 137.725 bestows no authority on the Assessor to make expenditures from the Assessment Fund or to determine which costs and expenses can be paid from the Assessment Fund. Instead section 137.725 plainly bestows this authority on the "County" which acts through the County Commission. This is in sharp contrast to statutes concerning other special funds which give the county office holder control over expenditures from the funds. *See, e.g.*, section 52.315.3 ("The collector has the sole responsibility for all expenditures made from the tax maintenance fund and shall approve all expenditures from such fund."); section 56.312 (giving the circuit or prosecuting attorney sole control to make disbursements from the delinquent tax fund); section 59.319.1 ("The recorder's funds shall be kept in a special fund by the treasurer and shall be budgeted and expended at the direction of the recorder and shall not be used to substitute for or subsidize any allocation of general revenue for the operation of the

_____

[8] Throughout his testimony before the trial court, the Assessor maintained that he has *sole* authority over expenditures from the Assessment Fund.

10

recorder's office without the express consent of the recorder."). Thus, we decline to conclude, as the Assessor urged at trial and in his Briefs, that the County Commission usurped the Assessor's power under section 137.725 to control disbursements from the Assessment Fund. The County Commission cannot be said to have usurped power the Assessor does not have.[9] Nor have we located any other statute that affords the Assessor disbursement authority from the Assessment Fund.[10]

During oral argument, the Assessor acknowledged that section 137.725 authorizes the County and not the Assessor to make payments from an Assessment Fund. The Assessor nonetheless argued that because the Assessor prepares the Assessment Maintenance Plan and because the Assessment Maintenance Plan effectively controls the "costs and expenses" that can be paid from the Assessment Fund, the practical effect is that the Assessor "controls" expenditures from the Assessment Fund. We have already discredited the Assessor's reasoning and need not repeat that discussion. We conclude that the trial court did not err when it found that the County Commission is authorized to

---

[9] The Assessor cites *State ex rel. Lack v. Melton*, 692 S.W.2d 302 (Mo. banc 1985), and *Kuyper v. Stone County Commission*, 838 S.W.2d 436 (Mo. banc 1992), to support his position that the County Commission is usurping the Assessor's authority to control disbursements from the Assessment Fund. In *Lack*, our Supreme Court held that while a county commission has authority to approve a budget for the assessor's office, the assessor has unilateral authority to make personnel decisions for the office. 692 S.W.2d at 304-05. *Kuyper* similarly holds that county officials, including the assessor, have discretion to spend the budget allocated to them by the county commission without interference from the county commission, provided the expenditures are within the limits and for the purposes outlined in the county budget. 838 S.W.2d at 440. Neither *Lack* nor *Kuyper* are applicable here. Both cases concern the assessor's inherent authority to conduct the business of the assessor's office. Neither case addressed an assessor's authority to control disbursements from an assessment fund.

[10] Two statutes do tangentially address expenditures from and/or reimbursements to an assessment fund. However, neither statute bestows authority on an Assessor to make expenditures from an Assessment Fund. Section 137.110 states that "[t]he assessor shall purchase assessment blanks, assessment books, and all necessary supplies relating to the assessment process at the expense of the county assessment fund." While section 137.110 directs an assessor to buy certain supplies, those purchases are necessarily expenses of an assessor's office to be paid by the county from an assessment fund pursuant to section 137.725, which commands the county to pay the "costs and expenses of the assessor." Section 137.750.1 provides that the State will cease reimbursements "until the ***county*** has expended at least two-thirds of that amount of money for assessment maintenance from its assessment fund." (Emphasis added.) This statute reinforces our conclusion that the County, not the Assessor, controls disbursements from the Assessment Fund.

act for the County to pay costs and expenses of the Assessor from the Assessment Fund without the Assessor's permission or authorization.

In his Reply Brief, the Assessor argues that section 137.725 did not authorize the County Commission to pay the 2012 invoice because the invoice reflected an annual charge for Technology Expenses and not a "monthly or semimonthly" charge as anticipated by the statute. This argument is not preserved for our review, as it was not raised as a claim of error in the Assessor's initial Brief.[11] "[A] party cannot alter or add to its Points Relied On in its reply brief." *Estate of Burford ex rel. Bruse v. Edward D. Jones & Co.*, 83 S.W.3d 589, 593 n.1 (Mo. App. W.D. 2002) (internal quotation marks omitted).

Even if the Assessor had preserved this claim of error, the argument is unpersuasive. According to longstanding Missouri precedent, if a statute specifies a time for the exercise of an action by a public officer such that the temporal reference is "made with a view to the proper, orderly, and prompt conduct of business," then the time limit is directory, not mandatory. *Schlafly v. Baumann*, 108 S.W.2d 363, 366 (Mo. 1937) (internal quotation marks omitted). The Legislature's reference to "monthly or semimonthly" payments in section 137.725 concerns the "proper, orderly, and prompt" conduct of business, or payment of costs and expenses, by the County. Thus, we reject the Assessor's argument that the temporal reference in section 137.725 is mandatory, and conclude that the reference is merely directory.

---

[11] In fact, although the trial court clearly relied on section 137.725 to enter its Judgment, the Assessor's initial Brief neither cites to nor addresses section 137.725.

12

The Assessor also argues in his Reply Brief that the Technology Expenses could not be paid from the Assessment Fund because they were not "costs and expenses" of the Assessor, but were instead legal obligations of the County. The Assessor argues that section 49.510 requires the County to provide county officials, including the Assessor, with the supplies and equipment necessary to perform the functions of their office, and that the cost for same must be "taken care of and paid out of the county treasury of said county at the time and in the manner that the county commission may direct."

Once again, because this argument first appears in the Assessor's Reply Brief, it is not preserved for our review. *Estate of Burford*, 83 S.W.3d at 593 n.1. Even if preserved for our review, we would find the argument unpersuasive. While section 49.510 speaks generally about the County's obligation to provide supplies and equipment to County officials and to pay for same from the County's "treasury," the section is silent with respect to the treasury's source of funds. Section 137.725 expressly authorizes the County to pay "all costs and expenses of the assessor" from the Assessment Fund and thus specifically authorizes the Assessment Fund as a source of funds to discharge the County's obligations under section 49.510. The Assessor's argument suggests that the County can only use general tax revenues deposited into its treasury to discharge its section 49.510 obligations. However, section 49.510 does not so provide. Although the County is authorized by section 137.037 to propose a levy "to provide funding for that portion of all costs of the assessor's office which would otherwise be paid from county general revenues," the County is not compelled to tax its citizens to pay for the Assessor's

13

costs and expenses when other County funds[12] are available to discharge the County's section 49.510 obligations.

The Assessor's first and second points relied on are denied.

## Conclusion

The County Commission is authorized to pay the Assessor's costs and expenses from the Assessment Fund. This includes the Technology Expenses. The trial court's Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

---

[12] The statutory sources for deposits into the Assessment Fund herein identified refer to the funds therein referenced as belonging to the County, not the Assessor.

14