Clark HUNTER and Kathy
Francis, Appellants,

v.

COUNTY OF MORGAN,
et al., Respondents.

No. WD 57120.

Missouri Court of Appeals,
Western District.

Feb. 22, 2000.

Michael L. McDorman, Versailles, for appellants.

Lori A. Kowalski, Jefferson City, for respondents.

Before: ULRICH, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

This appeal arises out of a dispute over the annual compensation that was to be paid to the deputies and assistants of the county collector's office of Morgan County, Missouri, for the county budget years of 1989–1997. The dispute is between the appellants, Clark Hunter (Hunter) and Kathy Francis (Francis), who were, at all times pertinent herein, the county collector and deputy county collector for Morgan County, respectively, and the respondents, Morgan County and the duly elected county commissioners thereof, Stanley Merriott, Rodney Schad, and Allen Nolting (hereinafter collectively referred to as the commission). In the trial court below, the appellants both sought a declaratory judgment, declaring that: (1) Hunter, as the county collector, had the exclusive statutory authority and discretion to set the annual compensation of his deputies and assistants, including for the years 1988 through 1997; and (2) the commission was required, by law, to appropriate annually a minimum amount of funds for this purpose, but for the specified years failed to do so. Francis sought further declaratory relief, declaring that she was entitled to back compensation from the county, representing the difference between the amount Hunter had agreed to pay to her as annual compensation for her services, rendered from September 1990 through December 1997, and the amount of funds the commis-

sion was required by law to appropriate for this purpose. Both appellants also sought injunctive relief prohibiting the commission, in the future, unless subsequently authorized by statute, from attempting to set the compensation of the collector's deputies and assistants. In addition, Hunter sought a mandatory injunction compelling the commission, in the future, to annually appropriate the minimum amount of funds required by law and as requested by him for the purpose of compensating his deputies and assistants. Finally, Francis sought a judgment for "damages" in the amount determined, in the declaratory judgment, to be owed her as back compensation for the years in question. The trial court denied the appellants' request for declaratory judgment and injunctive relief and Francis's claim for "damages."

The appellants raise five points on appeal. In all five points, they claim that the trial court erred in denying their requested relief because, in doing so, it erroneously declared and applied the law as found in §§ 52.281, RSMo Supp.1987,[1] and 52.271, RSMo Supp.1988, RSMo Supp.1993, and RSMo 1994.

We affirm in part and reverse and remand in part.

## Facts

At the time of trial, Hunter had served since 1983 as the duly elected county collector for Morgan County, a third-class county. As the county collector, he had the authority to hire deputies and assistants for his office. In March 1983, he hired Francis to serve as his deputy collector. She was still serving in this position at the time of trial. Francis generally worked thirty-five hours per week and, on occasion, worked overtime hours. For overtime hours in excess of thirty-five up to forty hours per week, she was paid at her normal hourly rate. For hours worked over forty per week, she was paid

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

at an hourly rate of time and a half. In addition to Francis, Hunter also hired temporary part-time assistants during tax season each year.

In January of 1988 through January of 1997, Hunter submitted his annual revenues and expenditures request form to the commission, requesting, *inter alia*, funds for the purpose of compensating Francis, his deputy collector, and his assistants. The table, *infra*, reflects these amounts and, in addition, the amounts actually appropriated by the commission and expended by Hunter for such compensation.

| Year | Requested | | Appropriated | | Expended | |
|------|-----------|---------|--------------|---------|-----------|---------|
| | Total | Francis | Total | Francis | Total | Francis |
| 1988 | $25,000 | $16,500 | $19,700 | | $21,729.76 | $14,942.84 |
| 1989 | $25,000 | $16,000 | $22,316 | | $22,869.95 | $17,215.84 |
| 1990 | $24,500 | $17,200 | $22,316 | | $22,972.95 | $16,549.11 |
| 1991 | $25,000 | $17,500 | $25,000 | | $19,936.67 | $16,361.61 |
| 1992 | $23,500 | $17,500 | $20,500 | | $19,811.26 | $16,112.24 |
| 1993 | $25,000 | $25,000 | $20,350 | | $20,480.55 | $16,287.76 |
| 1994 | $25,000 | $18,000 | $23,500 | | $21,686.25 | $16,685.61 |
| 1995 | $30,000 | $18,800 | $23,500 | | $24,451.51 | $16,604.61 |
| 1996 | $31,750 | $20,750 | $25,287 | $17,137 | $24,718.92 | $17,272.94 |
| 1997 | $38,000 | | $24,637 | $17,137 | $25,501.01 | $18,510.51 |

The expenditures, as reflected in the table, were allowed pursuant to "payroll authorizations[s]" signed by the commission. From 1988 through 1997, the commission authorized the county clerk to pay Francis as follows: 1988—$995 per month or $6.56 per hour; 1989—$6.76 per hour; 1990—$1,137.53 per month; 1991—$7.50 per hour; 1992—$7.50 per hour; 1993—$7.70 per hour; 1994—$1,183 per month; 1995—$1,183 per month or $7.80 per hour; 1996—$1,220.91 per month or $8.05 per hour; and 1997—$1,258.83 per month or $8.30 per hour.

On September 26, 1997, the appellants filed their first amended two-count petition.[2] In Count I, Hunter sought: (1) a declaration that "Defendants are without authority to deny Plaintiff Clark Hunter an appropriation in an amount less than provided by Section 52.271 RSMo for purposes of compensating his Deputy Collector and other clerical employees"; (2) a declaration that "Defendants are without authority to set the salaries of the employees of the County Collector's office and that said salaries should be entirely within the discretion of Plaintiff Clark Hunter as long as same may be paid from his approved budget"; (3) a preliminary and permanent injunction enjoining the Commission from "continuing to appropriate such sums to Plaintiff Clark Hunter's budget as are less than requested by Plaintiff ... as long as such request is within the amount allowed by Section 52.271 RSMo"; and (4) a preliminary and permanent injunction enjoining the commission "from determining the salaries to be paid to the employees of Plaintiff Clark Hunter's office." In Count II, Francis sought: (1) a declaration that "Defendants are without authority to set Plaintiff Kathy Francis' salary, and that said salary is entirely within the discretion of the Morgan County Collector so long as same may be paid from the Morgan County Collector's approved budget"; and (2) a preliminary and permanent injunction enjoining the Commission from continuing to determine her salary; and

**2.** Hunter and Francis filed their original petition against the respondents on December 30, 1996.

(4) "[r]equiring [the Commission] to pay to Plaintiff [Francis] the sum represented by the difference between the salary agreed upon between Plaintiff and her employer and the salary unlawfully determined by [the Commission], together with interest...."

On March 16, 1998, Hunter filed a motion to amend Count I of the first amended petition by interlineation to seek a declaration that, pursuant to § 52.271, the commission was required to appropriate to his office an amount not less than $48,471.85 for 1988 through 1993, and an amount not less than $75,479.77 to $90,132.77 for 1994 through 1997 for the purpose of compensating Francis and his other assistants, which amendment was allowed by the trial court.[3]

A hearing was held on the appellants' first amended petition on March 16, 1998. At the hearing, Warren Anderson, a county commissioner for Morgan County from 1985 through 1996, testified that, beginning in 1988 and through December 31, 1996, when his term as a commissioner ended, the commission set Francis's hourly wage and that wage was the most the commission would authorize to be paid out of the county general revenue fund. He testified that even when Francis reported a different hourly wage on her monthly time reports, she was paid the wage set by the commission. He also testified that, beginning in 1988, the commission believed that it had the authority to set the compensation of the collector's deputies and assistants and was not required to appropriate a lump sum amount out of which the county collector had the discretion to pay his employees. He also testified that, even though Hunter never indicated to him that he wished to use some or all of the funds appropriated for the compensation of his assistants to pay Francis a higher amount of compensation than that approved by the commission, the commission never intended that he would be able to do so unless specifically approved by it first.

Both Hunter and Francis testified at the hearing that, sometime prior to 1998, they orally agreed that her compensation, beginning in 1988, would be $8.25 per hour and that thereafter she would receive an annual twenty-five cent per hour increase. They further testified that, beginning in January 1988, she was required to submit monthly time reports, signed by Hunter, to the county in order to be paid for her services. From January 1988 through March 1995, Francis reported an hourly wage rate below that allegedly agreed upon between Hunter and her, but often times higher than that approved by the commission. In April 1995 through the date of the hearing, she reported an hourly wage rate at that allegedly agreed upon by them. Both Francis and Hunter testified that the reason why she did not report the hourly wage rate agreed upon by them until April 1995 was because it would have been a futile act in that the commission had informed them that she would be paid at the hourly wage rate set by it even if she reported a different rate on her monthly time reports.

On June 17, 1998, the trial court entered its findings of fact and conclusions of law and found that for the years 1989 through 1993, the commission was required by § 52.271, RSMo Supp.1988, to appropriate not less than $19,700 annually for the purpose of compensating Hunter's deputies, including Francis, and his assistants, and it had done so. For the years 1994 through 1997, the trial court found that the commission was required by § 52.271, RSMo Supp.1993 and RSMo 1994, to appropriate an amount not less than $16,550 annually for the specific purpose of compensating Francis, and a total amount of not less than $20,500 for compensating both Francis and Hunter's assistants. With the exception of 1994, the court found that the commission had appropriated the amounts

---

**3.** Although the record reflects that the trial court sustained Hunter's motion to amend Count I of the first amended petition, it does not reflect whether he ever did so.

required. As to 1994, the trial court found that the commission had only appropriated $16,500 for Francis's salary, but that such was "harmless error since the actual expenditure for [Francis] exceeded $16,500." The court further found that "Sections 52.270 and 52.280 were repealed in 1987, effective January 1, 1988, and have no effect upon appropriations for Deputy and Clerical salaries for any times relevant to this lawsuit." The trial court denied Francis's request for back compensation, finding that she was not entitled to receive any additional compensation for her services rendered after September 1, 1990, and through 1997.

The court, relying on *Kuyper v. Stone County Commission,* 838 S.W.2d 436 (Mo. banc 1992), found that Hunter, as the county collector, could expend the funds appropriated to his office by the commission as he saw fit, provided that he did so within the limits and for the purposes set out in the appropriation order. However, the court also concluded that "due to the

nature of operation of the Collector's office with only one full-time employee and the hiring of part-time help during the busy tax season alone, the separate line-item appropriations for Deputy and Clerical salaries is an appropriate exercise of budgetary functions by the County Commission."

On or about July 30, 1998, Hunter and Francis filed their notice of appeal to the Missouri Supreme Court. On April 5, 1999, the supreme court, pursuant to Mo. CONST. art. V, § 11, transferred the cause to this court, where it determined jurisdiction was vested.

This appeal follows.

## Discussion

As stated, *supra,* in all five points on appeal, the appellants claim that the trial court erred in denying their petition for declaratory judgment because it erroneously declared and applied the law as found in §§ 52.281, RSMo Supp.1987, and 52.271, RSMo Supp.1988, RSMo Supp. 1993, and RSMo 1994.[4] Specifically,

4. (1) The trial court erred in finding that Sections 52.270 and 52.280, RSMo, repealed in 1987 effective January 1, 1988, had no effect upon appropriations for deputy and clerical salaries for any time relevant to this lawsuit, because subsection 3 (later subsection 2 by 1993 amendment) of Section 52.271 RSMo (1988) necessitates the use of Sections 52.270 and 52.280 to perform the computations required by subsection 3, in that such finding by the trial court rendered subsection 3 of Section 52.271 RSMo meaningless.
(2) The trial court erred in finding that Respondent complied with Section 52.271 RSMo (1988 and as amended 1993) in appropriating no less than $19,700.00 (1988 appropriation by the county commission) for the years 1989–93 and no less than $20,500.00 (the greater of the amounts appropriated by the county commission in 1992 and 1993) for 1994 and thereafter for the employment of the county collector's deputy and assistants, because said sums are not the minimum appropriations provided for under said section, in that Section 52.271 RSMo mandates non-discretionary minimum appropriations to the county collector as previously allowed by law prior to the repeal of Sections 52.270 and 52.280 RSMo.

(3) The trial court erred in not finding that the actions of Respondent in setting the salary of Appellant Kathy Francis were in excess of its authority, because Respondent had no authority to set and determine the salary of the deputy collector, in that Section 52.281 RSMo (1987), which granted such authority, was repealed and the authority to set and determine the compensation of the deputy collector was restored to the collector with the enactment of Section 52.271 RSMo (1988).
(4) The trial court erred in finding that Respondent has authority to make separate line item appropriations for deputy and clerical salaries, because this exceeds the authority granted to Respondent under Section 50.540 RSMo (amended 1965), in that Section 52.271 RSMo (1988 and as amended 1993) vests the authority in the collector alone to determine the needs of his office, including the number of employees and their compensation, and Respondent is obligated to follow this legislative mandate.
(5) The trial court erred in finding that Appellant Kathy Francis has been fully compensated according to law and has therefore sustained no damage, because Appellant Kathy Francis has not been fully compensated under her agreement with the county collector to which Respondent has

Points I, II, and IV deal with the issue of whether the commission was required by law but failed to appropriate the sums requested by Hunter to compensate Francis for her services as his deputy collector for the years in question, as they had agreed upon, while Points III and V deal with the issue of whether Hunter, as the county collector, or the commission had the authority to set the compensation for the collector's deputies and assistants. With respect to these issues, the appellants claim that the statutes in question should be interpreted such that they were entitled to a declaration of the trial court that: (1) Hunter, as the county collector, had the exclusive statutory authority and discretion to set the annual compensation of his deputies, including Francis, and assistants, including for the years 1988 through 1997; (2) the commission was required, by law, to appropriate annually a minimum amount of funds for this purpose, but for the years in question, failed to do so; and (3) Francis was entitled to back compensation from the county, representing the difference between the amount Hunter had agreed to pay to her as annual compensation for her services, rendered from September 1990 through December 1997, and the amount of funds the commission was required by law to appropriate for this purpose. From this, the appellants also claim that they were entitled to the injunctive relief requested, and Francis claims she was entitled to "damages" for any back compensation declared by the trial court as due her.

Because all the appellants' claims on appeal, attacking the trial court's denial of their petition for declaratory judgment, involve an interpretation of the statutes implicated to determine the correct procedure for setting compensation for deputy county collectors, such as Francis, and appropriating county funds for that purpose, we will address them together to determine whether the trial court erred, in whole or part, in denying the appellants' petition for declaratory judgment, as they claim.

■ " 'In an action for declaratory judgment tried before a court without a jury, the judgment entered by the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or the court erroneously declared or applied the law.' " *Bates v. Missouri Dep't of Corrections*, 986 S.W.2d 486, 488 (Mo.App.1999) (*quoting Local 781 Int'l Ass'n of Fire Fighters v. City of Independence*, 947 S.W.2d 456, 459 (Mo.App.1997)). The trial court's judgment will be affirmed if the result reached is correct on any tenable basis. *Hadel v. Board of Educ.*, 990 S.W.2d 107, 111 (Mo.App.1999) (*citing Hay v. Kohl*, 902 S.W.2d 850, 851 (Mo.App.1995)). As such, in a declaratory judgment case " 'we do not need to agree with the reasoning of the trial court in order to affirm the result.' " *Id.* at 114 (*quoting McDermott v. Carnahan*, 934 S.W.2d 285, 287 (Mo. banc 1996)).

Due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses, accepting all, part, or none of the testimony it hears. *Ousley v. Casada*, 985 S.W.2d 757, 758 (Mo. banc 1999); *Mullenix–St. Charles Properties, L.P. v. City of St. Charles*, 983 S.W.2d 550, 555 (Mo.App.1998); *McCreary v. McCreary*, 954 S.W.2d 433, 439 (Mo.App. 1997). However, when the issues to be determined on appeal are questions of law, such as statutory interpretation issues, no deference is due the trial court's judgment and our review is *de novo*. *Eckenrode v. Director of Revenue*, 994 S.W.2d 583, 585 (Mo.App.1999) (*citing State v. Haskins*, 950 S.W.2d 613, 615 (Mo.App.1997)); *Union Pac. R.R. Co. v. American Family Mut. Ins. Co.*, 987 S.W.2d 340, 342 (Mo. App.1998).

no standing to object, in that Respondent has no authority to determine the salary of Appellant Kathy Francis and, therefore, has

no authority to determine the sufficiency of the compensation agreement between Clark Hunter and Kathy Francis.

Our disposition of the issues on appeal centers on two issues, whether: (1) Hunter, as the county collector, had the exclusive statutory authority and discretion to set the annual compensation of his deputies, including Francis, and assistants, including for the years 1988 through 1997; and (2) the commission was required, by law, to appropriate annually a minimum amount of funds for this purpose, but for the years in question failed to do so. We address these issues individually, *infra*.

### A. Authority to Establish the Compensation of Deputies and Assistants

■ With respect to who had the authority to establish the compensation of the deputies and assistants of the county collector, the parties do not dispute that, prior to 1988, Hunter, as the county collector, had the authority, but, as of January 1, 1988, such authority was transferred from him to the commission by the enactment of § 52.281, RSMo Supp.1987. However, the appellants contend that the subsequent repeal of this section and the enactment of § 52.271, RSMo Supp.1988, effective May 13, 1988, and subsequent amendments thereto, restored to Hunter the exclusive statutory authority to establish or set the compensation of his deputies, including Francis's, and assistants. We agree.

Prior to January 1, 1988, Hunter, as the county collector for Morgan County, a third-class county, was allowed, pursuant to § 52.260, RSMo 1986, to retain, as commissions, one percent of all state and local taxes collected by his office, except ditch and levee taxes. Under § 52.270.2, RSMo 1986, he was authorized, out of these commissions, to pay "salaries and expenses of his office and other costs of collecting the revenue." After deducting these amounts, he was allowed to retain the residue as his compensation, up to $10,000. *Id.* As further compensation, for mailing tax statements and receipts, he was allowed an additional one-half of one percent of all

taxes collected, excluding railroad and utility taxes. § 52.250, RSMo 1986. In addition, he was also allowed to retain, pursuant to § 52.280.1, RSMo 1986, an amount equal to seventy percent of the commissions for the purpose of compensating his deputies, appointed pursuant to § 52.300, RSMo 1986, and clerical hires. At that time, such compensation was expressly prohibited from being paid out of the county general revenue fund. § 52.280.1, RSMo 1986. There is no dispute that, pursuant to these statutes, prior to January 1, 1988, Hunter had the exclusive statutory right to hire and set the compensation of his deputies and clerical hires.

In 1987, the General Assembly amended Chapter 52, RSMo, so as to change the way in which the county collector's office was funded and the manner in which he and his deputies and clerical hires were to be compensated. In this respect, effective January 1, 1988, § 52.270, RSMo 1986, was repealed and § 52.260, RSMo Supp.1987, was amended such that Hunter was no longer allowed to retain the commissions earned by his office for collecting taxes, but was required to deposit them in the county general revenue fund. As to Hunter's compensation, § 52.269, RSMo Supp. 1987, was enacted providing that his total compensation was to be paid out of county general revenue based on the schedule set forth in the statute, except that he was allowed to retain, until the next general election after January 1, 1988, the fee allowed by § 52.250, RSMo 1986, for the collection of local ditch and levee taxes.

In addition to § 52.270, RSMo 1986, being repealed, § 52.280, RSMo 1986, governing the compensation of the collector's deputies and assistants, was also repealed, effective January 1, 1988, and § 52.281, RSMo Supp.1987, enacted in lieu thereof. It read:

> The county collector of any county may employ deputy collectors and clerical staff. The compensation of such deputies and clerks shall be established by

the county commission and paid from the county general fund.

§ 52.281, RSMo Supp.1987. The parties do not dispute that under this statute the county collector had the authority to employ deputies and clerical staff, but that, effective January 1, 1988, the commission had the authority to set their compensation. Whatever the impetus was for the enactment of this statute, it was short-lived, in that, in the very year it took effect, the legislature proceeded to repeal it and enact in lieu thereof § 52.271, RSMo Supp.1988, effective May 13, 1988. This section provided:

1. The county collector in each county of the third class is entitled to employ deputies and assistants and for the deputies and assistants, is allowed until December 31, 1994, not less than the amount allowed in 1988.

2. Beginning January 1, 1995, the deputies and assistants, including the chief deputy county collector, shall receive compensation in an amount set by the governing body of the county.

3. For the purpose of computing the various amounts under the provisions of subsection 1 of this section, the salary of the county collector is the total compensation provided in section 52.269.

§ 52.271, RSMo Supp.1988. From this, the appellants contend that the statutory authority to set the compensation of the deputies and assistants in the collector's office was restored to Hunter for the budget year 1989, so that the commission's authority to set compensation was only for the budget year 1988. We agree.

 In interpreting statutes, our purpose is to ascertain the intent of the legislature. *American Healthcare Management, Inc. v. Director of Revenue*, 984 S.W.2d 496, 498 (Mo. *banc* 1999) (*citing Hyde Park Hous. Partnership v. Director of Revenue*, 850 S.W.2d 82, 84 (Mo. *banc* 1993)). In doing so, we look to the language used, giving it its plain and ordinary meaning. *Id.* When a word used in a statute is not defined therein, it is appro-

priate to derive its plain and ordinary meaning from a dictionary. *Id.* In interpreting a statute, we are required to give meaning to each word, clause, and section of the statute whenever possible. *Spradlin v. City of Fulton*, 982 S.W.2d 255, 262 (Mo. *banc* 1998); *City of Ellisville v. Lohman*, 972 S.W.2d 527, 534 (Mo.App.1998). The courts are without authority to read into a statute a legislative intent that is contrary to the intent made evident by giving the language employed in the statute its plain and ordinary meaning. *Emery v. Wal–Mart Stores, Inc.*, 976 S.W.2d 439, 449 (Mo. *banc* 1998); *Kearney Special Rd. Dist. v. County of Clay*, 863 S.W.2d 841, 842 (Mo. *banc* 1993). When the legislative intent cannot be ascertained from the language of the statute by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied. *Spradlin*, 982 S.W.2d at 258 (*citing State ex rel. Maryland Heights Fire Protection Dist. v. Campbell*, 736 S.W.2d 383, 387 (Mo. *banc* 1987)).

With the repeal of § 52.281, RSMo Supp.1987, and the enactment of § 52.271, RSMo Supp.1988, and giving the language thereof its plain and ordinary meaning, we find that the legislature intended that the county collector would have the authority to set compensation for his deputies and clerical staff until January 1, 1995, at which time the commission's authority in this regard, which was terminated by the repeal of § 52.281, RSMo Supp.1987, would be restored. We glean this from the fact that: (1) the language of § 52.271.2, RSMo Supp.1988, expressly authorizing the commission to set compensation, was prefaced by the phrase, "[b]eginning January 1, 1995"; and (2) § 52.271.1, RSMo Supp.1988, not only expressly authorized the county collector "to employ deputies and assistants," but "allowed" for them, until December 31, 1994, "not less than the amount allowed in 1988." Logically, the commission could not "begin" to set compensation for the collector's depu-

ties and assistants on January 1, 1995, unless the legislature believed under the law as it existed at the time and intended by its repeal of § 52.281, RSMo Supp.1987, that the commission did not have such authority preceding the commencement date. Giving the language of § 52.271.2, RSMo Supp.1988, its plain and ordinary meaning, there can be no interpretation other than that the legislature intended that the county collector, through December 31, 1994, was to be allowed by the commission a minimum appropriation, based on the 1988 compensation set by the commission, to pay the compensation the collector had agreed to pay his deputies and assistants.

In 1993, § 52.271, RSMo Supp.1988, was amended, effective August 28, 1993, to provide:

1. The county collector in each county of the third class is entitled to employ deputies and assistants, and for the deputies and assistants is allowed not less than the amount allowed in 1992 or 1993, whichever is greater.

2. For the purpose of computing the various amounts under the provisions of subsection 1 of this section, the salary of the county collector is the total compensation provided in section 52.269.

§ 52.271, RSMo Supp.1993. The 1993 amendment to the statute deleted what had previously been subsection 2, which authorized the commission to set compensation starting January 1, 1995. § 52.271.2, RSMo Supp.1988. From this amendment, it is clear that the legislature had a change of heart as to the commission's having the authority to set compensation commencing January 1, 1995, and intended that the county collector continue to have the authority, as the appellants contend.

■ The commission contends that, in spite of the repeal of § 52.281, RSMo Supp.1987, and the enactment of § 52.271, RSMo Supp.1988, and the 1993 amendment thereto, all dealing with the commission's express authority, or lack thereof, to set the compensation for deputies and as-

sistants of the county collector's office, it still had such authority pursuant to §§ 50.330, 50.540, and 50.610. Essentially, what the commission is contending is that, when the collector's budget was switched from special funding to funding from the county's general revenue fund, his budget, like those of other county officials, was subject to its general budgetary powers, specifically those found in the sections cited. We disagree.

Section 50.330 presently provides: "Any salary provided for a county officer, deputies and assistants, shall be paid by warrants drawn on the county treasury and *unless otherwise provided by law*, shall be approved by the governing body of the county." (Emphasis added.) The commission interprets this statute as giving it the right to approve or disapprove the salaries of all deputies and assistants, including those of the county collector, for the years in question. However, this version of the statute was not effective until August 28, 1992, and would not have been in play for the budget years 1989–1992. The prior version, § 50.330, RSMo Supp. 1988, which was in play for those years, did not contain the language, "and unless otherwise provided by law, shall be approved by the governing body of the county." As such, for budget years 1989–1992, § 50.330, RSMo Supp.1988, did not require the commission's approval of the salaries set by Hunter for his deputies and assistants, specifically Francis's, as the commission contends. Hence, the only question, with respect to the application of § 50.330, is whether the present version of the statute required the commission's approval of salaries in the collector's office for the years 1993–1997.

Prior to 1988, the legislature had created a statutory scheme whereby the collector's office of a third-class county was treated as a self-sufficient entity in that it was allowed to retain the monies it earned, with some limitations, while being required to pay its expenses, including the compensation of the collector, and his deputies

and assistants. As such, as discussed, *supra*, the commission does not dispute that, prior to 1988, the collector was solely responsible for hiring and setting the compensation of his deputies and assistants, for which a funding mechanism was provided that did not permit an appropriation by the commission from the county general revenue fund. Nonetheless, obviously not wanting to leave the collector with unfettered discretion in determining what amount to pay his deputies and assistants, not to mention his own salary, the legislature effectively limited the amount he could pay in office salaries, unless he chose to use his own personal funds, by restricting the funds that were available for this purpose, specifically limiting him to a percentage of the taxes he collected. Thus, under this scheme, there was no need to subject the compensation the collector paid to his deputies and assistants to oversight by the commission. However, as discussed, *supra*, this statutory scheme was changed in 1988, so that the collector's office was to be treated like other county offices with respect to its office budget being funded out of the county general revenue fund. The question is whether, in this regard, it was to be treated, in all respects, like other county offices, including requiring the approval by the commission of the compensation to be paid to deputies and assistants, under § 50.330, for the budget years 1993–1997.

In amending § 50.330 in 1992, requiring approval by the commission of salaries to be paid to deputies and assistants, it was obviously the legislature's intent to limit what a county officer could pay a deputy or assistant based on the resources available to the county, while bringing some uniformity to what was being paid to similarly employed individuals throughout the courthouse to promote high job morale by preventing employee jealousies due to perceived pay inequities. Nonetheless, the provision of the statute, requiring approval of salaries by the commission, is qualified by the phrase, "unless otherwise provided by law." This indicates an intent by the legislature to subject this general provision to exceptions created by it pursuant to other provisions in the law. In this regard, after deciding that the commissions earned by the collector should be deposited in the general revenue fund and that salaries of the collector's deputies and assistants should be paid out of the same, the legislature went back and forth, in a very short period of time, as to whether or not it wanted the collector or the commission to set the salaries, finally choosing the collector. In our view, this clearly expressed an intent to take the commission out of the loop in setting the salaries of the collector's office.

In replacing the pre–1988 statutory scheme, the legislature necessarily repealed the then existing restrictions on the collector as to what he could pay his deputies and assistants. In order to replace these restrictions, the legislature enacted § 52.271.1, RSMo Supp.1988, to provide that the collector would be "allowed" for this purpose an amount "not less than the amount allowed in 1988," and, in 1993, amended this section to provide for an amount "not less than the amount allowed in 1992 or 1993, whichever is greater." § 52.271.1, RSMo Supp.1993. In other words, unless the commission agreed to appropriate monies for this purpose in excess of these minimums, the collector was limited as to what he could pay in salaries to his deputies and assistants. This then effectively served the same purpose as requiring the approval of the commission of the salaries of deputies and assistants, limiting the lug the collector could place on the general revenue fund for paying his office's salaries. Given this, it is our view that the legislature intended to provide a separate procedure for the setting of salaries of the collector's deputies and assistants and not requiring the commission's approval pursuant to § 50.330.

For the reasons stated, we reject the commission's contention that § 50.330 worked to allow it to set the compensation

to be paid Hunter's deputies and assistants for the budget years in question. Having made this determination, we now turn to the commission's further contention that § ˚50.540.4, which governs, *inter alia,* the duties of the county budget officer in preparing the budget for submission to the county commission, and § 50.610, which governs the commission's revision and final approval of the budget, authorized it to set the compensation of Hunter's deputies and assistants, including Francis's.

■ Section 50.540.1 requires that county officials in a third-class county submit to the county budget officer their proposed budgets on or before the fifteenth day of January of the budget year in question. After which, § 50.540.4 provides, in pertinent part:

> The budget officer shall recommend and the county commission shall fix all salaries of employees, *other than those established by law,* except that no salary for any position shall be fixed at a rate above that fixed by law for the position.

(Emphasis added.) Section 50.610 provides, in pertinent part, that, after receiving the proposed budget from the budget officer, "the county commission may revise, alter, increase or decrease the items contained in the budget and may eliminate any item or add new items."

As in the case of § 50.330, § 50.540.4, by its express terms, does not apply to authorize the commission to "fix" the salary of a county employee where the salary is otherwise fixed by law. Thus, because we have already determined that the salaries of deputies and assistants in the collector's office are otherwise established by law, § 50.540.4 did not apply, as the commission contends, authorizing it to set compensation for the deputies and assistants of the collector's office. Having determined that § 50.540.4 does not aid the commission's argument, we turn our attention to § 50.610.

■ Unlike § 50.540, § 50.610, giving the language used its plain and ordinary

meaning, does not deal with the commission's authority to fix the salaries of county employees, but rather, it deals with its authority to increase or decrease the appropriations for the various items requested by county officials in their budget requests. With respect to salary and compensation appropriations, we recognize that in certain circumstances the power to appropriate could work, in effect, to allow the commission to set the compensation of an employee. This would occur where there is only one deputy or assistant in an office such that any revision by the commission of the county official's budget request for that purpose would work to raise or lower his or her compensation, in effect, fixing or setting the compensation. However, the distinction between the commission's authority to fix the compensation of deputies and assistants and appropriating funds for that purpose is significant where the legislature has imposed a minimum amount that must be appropriated for payment of compensation. The significance lies in the fact that, because a minimum appropriation is required, the commission's power to control compensation through the appropriation process is restricted on the low end, which would not be the case if it were allowed to fix compensation without limitation.

As discussed, *supra,* § 52.271.1, RSMo Supp.1988, in effect for budget years 1989–1993, provided that the collector would be allowed from the general revenue fund a sum "not less than the amount allowed in 1988," and § 52.271.1, RSMo Supp.1993, in effect for budget years 1994–1997, provided for an amount "not less than the amount allowed in 1992 or 1993, whichever is greater." Giving this language its plain and ordinary meaning, we read these statutes as requiring the commission to appropriate a minimum amount of funds, as specified, for the purpose of paying the wages of the collector's deputies and assistants, including Francis's. As such, although § 50.610 authorized the commis-

sion to review Hunter's budget requests in 1989–1997 for payment of the wages of his deputies and assistants, which would have included Francis's, and appropriate monies for that purpose, it was not authorized by the statute to actually fix or set the compensation or appropriate an amount which was less than that required by law.

After a careful review of the trial court's judgment with respect to the issue of whether Hunter or the commission had the authority to set the compensation of his deputies and assistants, including for the years of 1989–1997, we cannot find an express declaration thereon. However, the court did conclude in its written judgment entry that "the County Commission's power to affect salaries exists *only* within the framework of the budgetary process." This is consistent with our interpretation of the law, which we view as a correct declaration that Hunter, not the commission, had the statutory authority to set the compensation of his deputies and assistants, including the compensation of Francis. As such, the trial court did not err in this respect.

Having determined that under the applicable statutes that Hunter, as the county collector, had the exclusive statutory authority to set the compensation of his deputies and assistants, including that of Francis, we next address the issue of what funds were required, by law, to be appropriated by the commission for this purpose, and whether it complied, as the trial court found and declared.

**B. Appropriations Required and Made by the Commission for Salaries in the Collector's Office**

With respect to appropriations for compensation of deputies and assistants in Hunter's office, the commission does not dispute that both the earlier and later versions of § 52.271 required it to appropriate a minimum amount based on appropriations for the prior specified years. In this regard, § 52.271.1, RSMo Supp.1988, provided, in pertinent part:

The county collector in each county of the third class is entitled to employ deputies and assistants and for the deputies and assistants is allowed until December 31, 1994, *not less than the amount allowed in 1988.*

(Emphasis added.) Whereas, § 52.271.1, RSMo Supp.1993, provided, in pertinent part:

The county collector in each county of the third class is entitled to employ deputies and assistants, and for the deputies and assistants, is allowed *not less than the amount allowed in 1992 or 1993, whichever is greater.*

(Emphasis added.) The appropriation dispute initially centers on what was intended by the legislature, given the minimum appropriation language of the statutes cited, as to the amount of the required minimum appropriation for compensation of the deputies and assistants in the collector's office, including Francis's.

The appellants contend that the statutory language in question should be interpreted as requiring an appropriation of an amount at least equal to that which would have been allowed under the pre–1988 statutory scheme, specifically under §§ 52.270, RSMo 1986, and 52.280, RSMo 1986, which were repealed, effective January 1, 1988. As discussed, *supra,* this scheme allowed compensation to be paid based on a percentage of commissions earned by the collector and did not permit any appropriations from the general revenue fund. Under their interpretations of the statutes in question, the appellants contend that the commission was required to appropriate annually at least $48,471.85 for the years 1989 through 1993, and $90,132.77 for the years 1994 through 1997. For its part, the commission contends that § 52.271.1, RSMo Supp.1988, which controlled for budget years 1989–1993, should be interpreted as only requiring it to appropriate at a minimum the amount that was actually allowed for salaries in the collector's office for 1988. With respect to

§ 52.271.1, RSMo Supp.1993 and RSMo 1994, which controlled for budget years 1994–1997, the commission contends it should be interpreted as requiring minimum appropriations based on the amount actually budgeted for compensation in 1992 or 1993, whichever was greater. Under its interpretations, the commission argues that it was required to appropriate no less than $19,700 for the years 1989 through 1993 and $20,500 for the years 1994 through 1997, and that it had done so, as found by the trial court. We agree.

Logically, in answering the question presented, we must first interpret § 52.271.1, RSMo Supp.1988. Giving the language of the statute, "not less than the amount allowed in 1988," § 52.271.1, RSMo Supp. 1988, its plain and ordinary meaning, the intent of the legislature is not subject to debate. It obviously intended for the minimum appropriation to be based on the amount that was *actually* allowed in 1988 by the commission for the payment of compensation of deputies and assistants in the collector's office. If. it would have intended the amount to be based on what would have been allowed if §§ 52.270, RSMo 1986, and 52.280, RSMo 1986, had not been repealed, it could have easily stated as such. However, the language in question clearly states otherwise. Thus, the minimum appropriation, under § 52.271.1, RSMo Supp.1988, would be based on the amount of the appropriation allowed by the commission in 1988, the one year when it had the authority to set compensation. As to § 52.271.1, RSMo Supp. 1993 and RSMo 1994, given the fact that the language is the same as in § 52.271.1, RSMo Supp.1988, other than referencing different base years, the interpretation would be the same, that the minimum appropriation is to be based on the *actual* amount budgeted for the years 1992 or 1993, whichever was greater.

In spite of the clear language of the statutes in question, the appellants contend that the language of § 52.271.3, RSMo Supp.1988, which later became § 52.271.2, RSMo Supp.1993 and RSMo 1994, indicated an intent by the legislature to employ the formula provided in §§ 52.270, RSMo 1986, and 52.280, RSMo 1986, which were repealed effective January 1, 1988, to determine the required minimum appropriation for compensation of the collector's deputies and assistants. The language in question reads, "For the purpose of computing the various amounts under the provisions of subsection 1 of this section, the salary of the county collector is the total compensation provided in section 52.269." § 52.271.2. The appellants argue that the reason that the legislature included this subsection was to direct the commission, in appropriating money for the collector's office, that, in employing the formula of the repealed sections, the collector was not allowed to "double dip," by receiving compensation under the old statutory scheme, as well as his salary under § 52.269. We disagree with the appellants' interpretation for several reasons. First, as found, *supra*, the language of both versions of § 52.271.1 is very clear as to the legislative intent, which would be in conflict with the interpretation that the appellants urge, based on the language of § 52.271.2, RSMo Supp.1993. Second, we do not read § 52.271.2, RSMo Supp.1993, as do the appellants. Giving the language of this subsection its plain and ordinary meaning, we read it simply as a reminder to the commission that, in reviewing and determining the amount of its appropriation for the wages of the collector's deputies and assistants, which could exceed the statutorily required minimum amount, it should bear in mind the collector's salary would be in addition to such appropriation and is determined pursuant to § 52.269.

In light of the foregoing analysis, we find that the trial court was correct in declaring that the commission was only required to appropriate for compensation of the collector's deputies and assistants, including the salary of Francis, the minimum amounts as provided pursuant to our interpretation of the applicable versions of

§ 52.271.1. In this respect, a review of the record would indicate that the commission appropriated $19,700 for compensation of the collector's deputies and assistants for budget year 1988. As such, under our interpretation of § 52.271.1, RSMo Supp. 1988, the commission was required to appropriate at least $19,700 for compensation for the budget years 1989–1993. In this regard, the record would reflect the following appropriations: 1. 989—$22,316; 2. 990—$22,316; 3. 991—$25,000; 4. 992—$20,500; and 5. 993—$20,350. Thus, as required by § 52.271.1, RSMo Supp.1988, for the budget years 1989–1993, the commission appropriated $19,700 or more for compensation of the collector's deputies and assistants. As to budget years 1994–1997, applying § 52.271.1, RSMo Supp. 1993 and RSMo 1994, the commission was required to appropriate the greater of the 1992 and 1993 amount, $20,500. The record reflects that it did, appropriating the following amounts: 1. 994—$23,500; 2. 995—$23,500; 3. 996—$25,287; and 4. 997—$24,637. Thus, the trial court did not err in declaring in its judgment that the commission was required to budget at least $19,700 for the compensation of Hunter's deputies and assistants for the years 1989–1993 and $23,500 for the years 1994–1997 and that it had done so.

Although the record would reflect that the commission, as declared by the trial court, did, in fact, appropriate in *toto* the required statutory amounts for compensation of Hunter's deputies and assistants for the years in question, this does not end our inquiry. This is so in that the appellants contend that, even if the commission were found to have appropriated the statutorily required minimum amounts in *toto* for compensation of all Hunter's deputies and assistants, its restrictions of how he expended those monies with respect to Francis's compensation violated § 52.271.1. We agree.

In preparing the county's annual budget for the years in question, the commission was charged with appropriating funds for the expenses of running the collector's office, including appropriating funds for the purpose of compensating his deputies and assistants, as discussed, *supra. Kuyper v. Stone County Comm'n,* 838 S.W.2d 436, 440 (Mo. *banc* 1992). In this respect, as declared by the trial court, the collector could expend these funds as he saw fit, provided the expenditures were "for the purposes set out in the appropriation order," *id.,* or in other words, for compensating his deputies and assistants. However, we find no authority for allowing the commission to further limit these expenditures. To allow this would, in effect, be empowering the commission to set the compensation of these employees, which is contrary to our interpretation of § 52.271.1. As such, we find that, while the commission's annual appropriation of funds for the purpose of compensating the deputies and assistants of the collector may be reflected in terms of each position to be compensated, for purposes of expenditure, it must be viewed in *toto* or as a lump sum, so that "[o]nce [the] appropriations are fixed and the appropriation order entered, the Commission may not control the spending decisions of the county [collector]," other than to require him to expend the funds for the purpose of compensating his employees. *Kuyper,* 838 S.W.2d at 440. *See also Circuit Court v. Jackson County,* 776 S.W.2d 925, 927 (Mo.App. 1989) (holding that, once funds are appropriated to a circuit court and are beyond review by the commission, the commission loses control over those funds; otherwise, "the amount of money available to the [c]ourt would be at the mercy of the [commission], even after the appropriation was made").

Given the foregoing analysis, we hold that the trial court erred to the extent it declared that the commission was authorized: (1) to line-item appropriate so as to restrict the expenditure of the total funds appropriated for the collector's office for the purpose of compensating his deputies

and assistants, specifically for Francis; or (2) to in any way restrict his expenditure of the total funds appropriated for this purpose, other than to restrict it for the payment of compensation to deputies and assistants. As such, we are required to reverse the trial court's judgment in this respect and remand the case to it to amend its judgment properly declaring the law as to this issue. Further, with respect to this issue, if the trial court determines the appellants are entitled to the declaratory relief requested, it is further ordered to consider whether the appellants are entitled to the injunctive relief they requested.

Having determined that Hunter, as the county collector, had the authority to set the compensation of his deputies and assistants, including the compensation of Francis, and that the commission could not affect this determination, except through the permissible limits of the appropriation process, as outlined, *supra*, we now turn to the issue of whether Francis was entitled to the "damages" she claimed. In this regard, she alleged that she sustained damages as a result of the commission's failure to appropriate and pay out the proper amounts for payment of her agreed upon salary as the deputy collector for the years in question. As such, she was asking for an award representing the difference between her agreed upon salary, to the extent authorized by statute, and the sums actually paid.

Initially, we address Francis's characterization of her claim for back wages as one for "damages." Given the nature of her claim, which, in fact, was to require the commission to pay over to her those sums which she alleges it was statutorily required to do as and for her compensation as the deputy collector, it would properly be characterized as one for a writ of mandamus. This is so in that mandamus is the appropriate action when seeking to require the performance by an official of a ministerial act. *State ex rel. Missouri Growth Ass'n v. State Tax Comm'n*, 998 S.W.2d 786, 788 (Mo. *banc* 1999). "A ministerial act is defined as an act that law directs the official to perform upon a given set of facts, independent of what the officer may think of the propriety or impropriety of doing the act in a particular case." *Jones v. Carnahan*, 965 S.W.2d 209, 213 (Mo.App.1998). "A discretionary act is one requiring the exercise of reason in determining how or whether the act should be done." *Id.* "Mandamus will lie only when there is a clear, unequivocal, specific right to be enforced. The purpose of the writ is to execute, not adjudicate." *Missouri Growth Ass'n*, 998 S.W.2d at 788 (citations omitted).

As to Francis's claim for "damages," the record is clear that the trial court denied the same. However, the record is unclear on what exact basis this was done. Initially, it would appear that it was based on the trial court's finding that the commission had appropriated the minimum funds required by law for compensating Hunter's deputies and assistants. However, as discussed, *supra*, this would not address the issue of whether the commission improperly restricted Hunter's expenditure of these funds such that funds would have been available to pay Francis's agreed upon compensation, either in whole or part, for the years in question, depending on how Hunter chose to distribute the total funds appropriated to his office by the commission for compensation of deputies and assistants. As such, on remand, the trial court is further instructed to review and determine this issue, including hearing additional evidence, if necessary.

We would further note from the record, as to the issue of Francis's entitlement to back wages, that the trial court found that there was no credible evidence to establish the agreed upon wages claimed by her up to April 1995. However, this would not, in and of itself, be dispositive of her claim as to these years in that, in order to determine whether she was entitled to such, the trial court would have to determine what was, in fact, agreed upon as compensation

and what funds were actually available to pay the same, based on our interpretation herein of the applicable law regarding appropriations. Hence, on remand, the trial court, with respect to Francis's claim for back wages, in addition to determining what funds were actually available to pay the same, is directed to also determine what was agreed upon as to her wages for the years in question. In doing so, it is free to hear additional evidence.

## Conclusion

The judgment of the circuit court is affirmed, except to the extent that it declared that: (1) the commission was authorized to restrict the county collector's expenditure as to an individual employee, specifically Francis, of the commission's total appropriation for compensation of his deputies and assistants; and (2) Francis was not entitled to back wages. As to these issues, the judgment is reversed, and the case is remanded for further proceedings in accordance with this opinion.

ULRICH, P.J., and HOWARD, J., concur.

