

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00022-CR

———————————————

MAURICE GLENN WILLIS SR., Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 0730283D

---

Before Kerr and Birdwell, JJ.; and Lee Ann Dauphinot (Senior Justice, Retired, Sitting
by Assignment).
Memorandum Opinion by Justice Dauphinot

## MEMORANDUM OPINION

Appellant Maurice Glenn Willis Sr. was convicted of capital murder in July 2000. This court affirmed his conviction on appeal.[1] In the appeal now before this court, Appellant contests the trial court's denial of his fourth postconviction motion for DNA testing of evidence in the possession of the Fort Worth Police Department. We are compelled to affirm the trial court's denial of the requested DNA testing.

### Brief Facts

The trial court adopted the State's proposed findings of fact and conclusions of law, finding that Appellant shot and killed Lorenzo Watts while the two were arguing about money Watts owed Appellant. LaTonya Reed saw Appellant shoot and kill Watts. Appellant first shot Watts in the chin. As Watts crawled toward a nearby bedroom, Appellant shot him once in the back. While Watts tried to fend off Appellant's attack with the gun, Appellant shot him multiple times in the chest. During the attack, Appellant repeatedly asked Watts where he kept his drugs and money. After shooting Watts, Appellant pulled a mattress over Watts's body. After Watts was dead, Appellant cut his head with a kitchen knife.

At the time of the murder, Appellant lived in a back room attached to Watts's house. After the murder and in the middle of the night, Appellant took various items belonging to Watts to Joyce Grimes's house.

---

[1] *Willis v. State*, No. 02-00-00318-CR (Tex. App.—Fort Worth 2001, no pet.) (not designated for publication).

The police found Watts dead in his bedroom, covered with a mattress. His home had been ransacked, but there was no evidence that the perpetrator had himself been injured in the attack on Watts. Appellant gave the police inconsistent statements regarding whether he had heard gunshots.

In ruling on the fourth DNA motion, the trial court found it was unlikely that any blood recovered from the crime scene belonged to anyone other than Watts since Watts had been shot in the face, back, and chest; cut on his head with a knife; and covered with a mattress. The trial court found in summary that "[s]ignificant non-DNA evidence" (Reed's eyewitness testimony and Appellant's possession of Watts's property) established that Appellant had shot and killed Watts while trying to obtain his drugs and money.

The trial court also found that Appellant had filed three prior motions requesting DNA testing on the items collected and possessed by the Fort Worth Police Department, including the items upon which he currently seeks testing. Appellant appealed the denial of his second motion for DNA testing to this court, and we affirmed the denial order.[2] In that second motion, Appellant did not seek testing of one of the items he now seeks to have tested: a blue hand towel found under one of the tires of Watts's car that had been abandoned on the I-35 service road.

---

[2]*Willis v. State*, No. 2-06-091-CR, 2008 WL 2780666, at *3 (Tex. App.—Fort Worth July 17, 2008, pet. ref'd) (mem. op., not designated for publication).

The trial court concluded that Appellant did not satisfy his burden of establishing "that any exculpatory DNA testing results would create a reasonable probability of his non-conviction given the non-DNA evidence connecting him to . . . Watts'[s] murder." Additionally, the trial court concluded that this fourth motion should be denied under the law-of-the-case doctrine "because the appellate court has already resolved the issue of whether [Appellant] meets the reasonable probability of non-conviction requirement in a previous appeal." Finally, the trial court concluded, "The probative value of any touch DNA recoverable from the towel . . . is minimized since [it] could have been touched by any other person who had been in contact with [it] before . . . Watts'[s] murder."

**Standard of Review and Applicable Law**

A convicting court may order postconviction DNA testing only upon making statutorily enumerated findings, including that "the convicted person establishes by preponderance of the evidence that the person would not have been convicted if exculpatory results had been obtained through DNA testing."[3] Such a finding "is an application-of-law-to-fact question that does not turn on credibility and demeanor and is therefore reviewed *de novo*."[4] In doing so, we generally review the entire record, that

---

[3] *State v. Swearingen*, 478 S.W.3d 716, 720 (Tex. Crim. App. 2015).

[4] *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002).

is, all of the evidence that was available to, and considered by, the trial court in making its ruling, including testimony from the original trial.[5]

But Chapter 64 motions are also subject to the law-of-the-case doctrine, which promotes "judicial consistency and efficiency."[6] According to that doctrine, "an appellate court's resolution of questions of law in a previous appeal are binding in subsequent appeals concerning the same issue."[7] Therefore, "when the facts and legal issues are virtually identical, they should be controlled by an appellate court's previous resolution."[8]

**Law-of-the-Case Doctrine Applies to All But Blue Towel**

In the appeal from the trial court's denial of Appellant's second motion for postconviction DNA testing, a majority of this court held that

> if the material was tested and excluded [Appellant] as the donor, this result would *not* establish his innocence because the donor of the material is not necessarily the person—or "lone attacker"—ultimately responsible for murdering [Watts]. The donor of the material could be [Watts] or any other person who had previously been in, on, around, or somehow in contact with the items that [Appellant] seeks to be tested and left behind DNA material.[9]

---

[5] *Asberry v. State*, 507 S.W.3d 227, 228 (Tex. Crim. App. 2016).

[6] *Swearingen*, 478 S.W.3d at 720.

[7] *Id.*

[8] *Id.*

[9] *Willis*, 2008 WL 2780666, at *3.

Thus, this court has already determined the same factual and legal issue we are confronted with here as to the same items sought to be tested, with the exception of the blue towel. Therefore, as to those items identified in prior DNA motions, the trial court ruling on Appellant's fourth DNA motion correctly determined that the law-of-the-case doctrine applied and that this court's prior opinion controls.[10]

**Potential Exculpatory Results From Blue Towel Would Not Entitle Appellant to Testing**

This court's prior opinion did not consider whether Appellant showed a statutory right to testing of the blue towel, which police collected from underneath one of the tires on Watts's abandoned car.[11] The car had been parked by the service road of I-35. Willie Howze testified that a man named Gilbert had told him about seeing the car, and Willie had driven by the car at least a couple of times. One of the times Willie drove by the car, he saw one of Watts's ex-girlfriends and her boyfriend walking away from the car, but he did not see them touch or do anything with the towel.

The trial court did not abuse its discretion by denying Appellant's fourth DNA motion as to the blue towel because he did not show by a preponderance of the evidence that he would not have been convicted if exculpatory results had been

---

[10] *See Swearingen*, 478 S.W.3d at 720.

[11] *See Fletcher v. State*, 214 S.W.3d 5, 7 (Tex. Crim. App. 2007) (noting that an appellate court may take judicial notice of its own records in the same or related proceedings involving the same or nearly same parties).

obtained through DNA testing. "Exculpatory results" means only results that exclude the defendant as the donor of the tested biological material.[12] But exculpatory results do not relieve a defendant from showing the likelihood that he would not have been convicted if the fact-finder had been able to consider and to weigh this exculpatory evidence against the other available evidence.[13] The probative value of DNA testing that excludes a defendant is diminished if there is a significant possibility that the DNA was deposited by an innocent person or if multiple potential contributors could have handled the item sought to be tested.[14]

The blue towel was found outside the car, underneath one of the wheels, on an I-35 service road near downtown Fort Worth. Even if Appellant's DNA were not found on the towel, the towel could have been blown there or already been in that location when the car was parked. Moreover, even if the towel had fallen out of the car, that car belonged to Watts. The same reasoning applies as with the other evidence Appellant sought to have tested: "[t]he donor of [any] material could be [Watts] or any other person who had previously been in, on, around, or somehow in contact with the" blue

---

[12]*Hall v. State*, 569 S.W.3d 646, 655–56 (Tex. Crim. App. 2019); *Reed v. State*, 541 S.W.3d 759, 774 (Tex. Crim. App. 2017).

[13]*Reed*, 541 S.W.3d at 774; *Holberg v. State*, 425 S.W.3d 282, 287 (Tex. Crim. App. 2014).

[14]*Dunning v. State*, 572 S.W.3d 685, 693 (Tex. Crim. App. 2019); *Hall*, 569 S.W.3d at 658.

towel. We therefore hold that the trial court did not err by denying Appellant's motion for DNA testing of the blue towel.

**Conclusion**

We have carefully considered all the evidence in the record, prior determinations by this court, and findings and conclusions reached by the trial court. Applying the appropriate standard of review, we hold that the trial court's denial of Appellant's fourth motion for postconviction DNA testing is supported by the record. We therefore affirm the trial court's order.

/s/ Lee Ann Dauphinot
Lee Ann Dauphinot
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 22, 2020