Opinion issued August 30, 2018



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00633-CV

———————————

**DONATO POLIGNONE AND NEAL D. ROY, Appellants**

**V.**

**BULLDOG CHEMICALS, LLC, Appellee**

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2015-71346**

---

## MEMORANDUM OPINION

Appellants, Donato Polignone and Neal D. Roy, (collectively, "appellants")

challenge the trial court's no-answer default judgment[1] in favor of appellee, Bulldog

---

[1] *See Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 183 (Tex. 2012) (no-answer default judgment constitutes "a default judgment caused by a defendant's failure to answer after service.").

Chemicals, LLC ("Bulldog Chemicals"), in its suit against them for breach of contract and quantum meruit. In two issues, appellants contend that the trial court erred in not granting their motion for new trial and rendering judgment against them in their individual capacities.

We affirm.

## Background

In its original petition, Bulldog Chemicals alleged that it entered into an agreement with appellants "for [the] purchase of goods, wares, merchandise, materials and/or services." In exchange for Bulldog Chemicals's agreement to "furnish[]" and "deliver[]" to appellants certain goods, appellants "agreed to pay" Bulldog Chemicals $21,750. However, after Bulldog Chemicals "shipped the goods" to appellants, they refused to pay the "amount owed." Bulldog Chemicals further asserted that appellants breached the parties' agreement and owe it $21,750, "exclusive of interest." Moreover, appellants "benefited from the use of the goods" and "are indebted in quantum meruit [to Bulldog Chemicals] in the principal sum of $21,750[]." And Bulldog Chemicals requested attorney's fees.

On February 3, 2016, Polignone was personally served with citation and a copy of the original petition. On March 2, 2016, Roy was personally served with citation and a copy of the original petition. After the returns of citations had been

2

on file with the clerk of the court for more than ten days[2] and appellants had failed to appear and answer, Bulldog Chemicals moved, on April 28, 2016, for a default judgment. On May 11, 2016, the trial court entered a default judgment against appellants, finding that they had been "duly and legally served with process" on February 3, 2016 and March 2, 2016, they "ha[d] wholly failed to appear or answer," they "ha[d] wholly made default," and "the citation[s] with the officer[s'] return[s] thereon ha[d] been on file with th[e] [trial] [c]ourt for ten (10) days exclusive of the date of filing and [the date of judgment]." The trial court then held that appellants are liable to Bulldog Chemicals, and it ordered them to pay $21,750 in damages, $5,921.04 in attorney's fees,[3] pre- and post-judgment interest, and costs.

On June 9, 2016, appellants filed an unverified[4] plea to the jurisdiction, arguing that the trial court lacked jurisdiction over Bulldog Chemicals's suit because Bulldog Chemicals did not have standing to bring claims against appellants in their individual capacities. They asserted that the agreement to purchase certain goods "existed exclusively" between Bulldog Chemicals and NuGenTec Oilfield Chemicals, LLC ("NuGenTec").[5] The trial court did not rule on appellants' plea.

---

[2]     *See* TEX. R. CIV. P. 107(h).

[3]     The trial court also ordered appellants to pay additional attorney's fees should they unsuccessfully appeal to the court of appeals and the Texas Supreme Court.

[4]     *See* TEX. R. CIV. P. 93(1)–(2).

[5]     We note that "NuGenTec" is spelled differently throughout the record.

That same day, appellants also filed an unverified motion for new trial, arguing that the original petition "d[id] not support [a] default judgment" against them because they "never interacted with [Bulldog Chemicals] as individuals" and "[a]ll of their interactions with Bulldog [Chemicals] were based on their capacit[ies] as agents of" NuGenTec; "there were defects in service" because Bulldog Chemicals "did not send a notice of intent to take a default judgment to the Texas Attorney General by certified mail, return receipt requested, at least ten days before filing the motion for default judgment"; and appellants' "failure to answer was not intentional, but was accidental," they "ha[d] a meritorious defense," and "a new trial w[ould] not delay or prejudice" Bulldog Chemicals.

Bulldog Chemicals responded to appellants' motion for new trial, asserting that "the default judgment [was] fully supported by [its] original petition"; appellants "were personally served with [its original] petition and citation and service w[as] proper"; and appellants "failed to satisfy the [requirements of] *Craddock [v. Sunshine Bus Lines Inc.*, 133 S.W.2d 124 (Tex. 1939)]."

After a hearing, the trial court denied appellants' motion for new trial.

**Standing**

In their second issue, appellants argue that the trial court erred in rendering judgment against them in their individual capacities because Bulldog Chemicals "lack[s] standing" to bring suit against them as individuals.

4

Subject-matter jurisdiction is essential to the authority of a court to decide a case, and standing is implicit in the concept of subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Standing is never presumed, cannot be waived, and may be raised for the first time on appeal. *Id.* at 443–46. We review standing under the same standard by which we review subject-matter jurisdiction generally. *Id.* at 446. Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004).

The test for standing requires that there be a real controversy between the parties that will actually be determined by the judicial declaration sought. *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). Without a breach of a legal right belonging to the plaintiff, no cause of action can accrue to its benefit. *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976). A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority. *Nootsie*, 925 S.W.2d at 661. And it has standing if: (1) it has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which it complains; (2) has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) has an individual stake in the controversy; (4) the challenged action has caused it some injury in fact, either economical, recreational, environmental, or otherwise; or (5) it is an appropriate

party to assert the public's interest in the matter as well as its own interest. *Lake Medina Conservation Soc'y, Inc./Bexar-Medina-Atascosa Ctys. WCID No. 1 v. Tex. Nat. Res. Conservation Comm'n*, 980 S.W.2d 511, 515–16 (Tex. App.—Austin 1998, pet. denied); *Billy B., Inc. v. Bd. of Trustees of Galveston Wharves*, 717 S.W.2d 156, 158 (Tex. App.—Houston [1st Dist.] 1986, no writ).

A plaintiff has the burden of alleging facts that affirmatively demonstrate a court's jurisdiction to hear a cause. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. In our review of standing, we construe the allegations in the pleadings as true and construe them in favor of the pleader. *Id.*; *Juarez v. Tex. Ass'n of Sporting Officials El Paso Chapter*, 172 S.W.3d 274, 278 (Tex. App.—El Paso 2005, no pet.). We look to the facts alleged in the petition, but may consider other evidence in the record if necessary to resolve the question of standing. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *In re Shifflet*, 462 S.W.3d 528, 537 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding). The standing inquiry "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 153, 156 (Tex. 2012) (internal quotations omitted) (courts "must assess standing plaintiff by plaintiff, claim by claim"). A challenge to standing cannot be used to require the party to prove its entire case but should be

limited to facts that might be characterized as primarily jurisdictional. *See Blue*, 34 S.W.3d at 554; *In re Shifflet*, 462 S.W.3d at 537.

Bulldog Chemicals, in its original petition, alleged that it entered into an agreement with appellants to "furnish[]" and "deliver[]" to them certain goods in exchange for appellants' agreement "to pay" Bulldog Chemicals $21,750. After Bulldog Chemicals "shipped the goods" to appellants, they refused to pay the "amount owed" to Bulldog Chemicals. According to Bulldog Chemicals, appellants breached the parties' agreement and caused Bulldog Chemicals damages in the amount of $21,750, "exclusive of interest." Bulldog Chemicals further alleged that appellants "benefited from the use of the goods" and "are indebted in quantum meruit [to Bulldog Chemicals] in the principal sum of $21,750[]."

We note that the record also contains an affidavit from Dustin O'Neal, the president of Bulldog Chemicals, in which he testifies:

> In May 2014, [appellants] placed an order with Bulldog [Chemicals] for Contone, a chemical used in drilling operations. Shortly thereafter, Bulldog [Chemicals] shipped the product to [appellants] and sent an invoice to [appellants] in the amount of $21.750.00 for payment. To date, [appellants] have failed to pay that invoice and $21,750.00 is still due and owing from [appellants].
>
> [Appellants] were given notice of Bulldog[] [Chemicals's] claim on many occasions. I emailed Mr. Polignone several times asking for payment of Bulldog[] [Chemicals's] invoice prior to the lawsuit being filed. Mr. Polignone replied to me on one occasion that he was going to return the Contone but he never did. To date, [appellants] are still in possession of the Contone sold by [Bulldog Chemicals].

7

> [Appellants'] refusal to pay Bulldog[] [Chemicals's] claim is without merit. [Appellants] purchased the product, Contone, from [Bulldog Chemicals] and [it] timely delivered the Contone pursuant to the purchase order. Mr. Polignone was a sophisticated buyer and had experience and knowledge of the Contone that [appellants] purchased from [Bulldog Chemicals]. [Bulldog Chemicals] answered [appellants'] general and specific questions about the use of Contone in oil and gas well drilling applications. [Bulldog Chemicals] did not make any express or implied warranties about the performance of Contone. There were no conditions as to the performance of Contone on the sale of the product.

And an invoice, also contained in the record, from Bulldog Chemicals states that "[p]er [a]greement [with] Donato [Polignone]," Bulldog Chemicals supplied 300 "50lb bags" of Contone at a price of $72.50 each, for a total of $21,750. The invoice also notes that it is "[p]ast [d]ue."

Here, Bulldog Chemicals has alleged that it had an agreement with appellants, Bulldog Chemicals performed under the parties' agreement, appellants breached that agreement, and Bulldog Chemicals sustained damages as a result of appellants' breach. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848–49 (Tex. 2005) (party has standing "when it is personally aggrieved" (internal quotations omitted)); *Nootsie*, 925 S.W.2d at 661; *see also Billy B., Inc.*, 717 S.W.2d at 158. And appellants do not dispute that there was an agreement with Bulldog Chemicals to purchase certain goods, namely, Contone, Bulldog Chemicals supplied Contone pursuant to that agreement, and Bulldog Chemicals did not receive "pay[ment] for the[] goods."

8

Instead, appellants argue that Bulldog Chemicals should not have sued them in their individual capacities because Bulldog Chemicals's agreement for the purchase of the goods was between it and NuGenTec and appellants never interacted with Bulldog Chemicals in their individual capacities, only as agents of NuGenTec. Any assertion that appellants are not liable to Bulldog Chemicals pursuant to the agreement at issue in this case implicates the merits of the case and does not affect Bulldog Chemicals's standing to bring suit against appellants or the trial court's jurisdiction.[6] *See Wells Fargo Bank, N.A. v. Ballestas*, 355 S.W.3d 187, 192 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Yasuda Fire & Marine Ins. Co. of Am. v. Criaco*, 225 S.W.3d 894, 898 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see*

---

[6] Although framed in the context of a "standing issue," appellants appear to raise a capacity complaint, i.e., they were not liable to Bulldog Chemicals *in the capacity* in which they were sued. *See John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 651–52 (Tex. App.—Dallas 2013, pet. denied) (noting confusion between standing and capacity issues and challenge to party's privity of contract is challenge to capacity, not standing); *Rhey v. Redic*, 408 S.W.3d 440, 456–57 (Tex. App.—El Paso 2013, no pet.) (whether plaintiffs could sue as individuals constituted capacity, not standing issue). Capacity is a distinct issue from standing and not a jurisdictional issue. *See Douglas-Peters v. Cho, Choe & Holen, P.C.*, No. 05-15-01538-CV, 2017 WL 836848, at *6–7, *9 (Tex. App.—Dallas Mar. 3, 2017, no pet.) (mem. op.); *Schlein v. Griffin*, No. 01-14-00799-CV, 2016 WL 1456193, at *5 (Tex. App.—Houston [1st Dist.] Apr. 12, 2016, pet. denied) (mem. op.). And the defense of capacity must first be raised by a verified pleading in the trial court pursuant to Texas Rule of Civil Procedure 93, otherwise it is waived on appeal. *See* TEX. R. CIV. P. 93(1)–(2); *see also Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996); *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991); *Brown v. Mesa Distribs., Inc.*, 414 S.W.3d 279, 285 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Here, appellants did not raise any capacity complaint in a verified pleading in the trial court.

*also Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, at *13–14 (Tex. App.—Dallas Nov. 4, 2015, no pet.) (mem. op.) (discussing standing versus capacity); *Intracare Hosp. N. v. Campbell*, 222 S.W.3d 790, 795 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (lack of capacity does not deprive trial court of subject-matter jurisdiction).

Accordingly, we hold that Bulldog Chemicals has sufficiently alleged facts and presented evidence demonstrating its standing to bring the instant suit against appellants.

We overrule appellants' second issue.

### Motion for New Trial

In their first issue, appellants argue that the trial court erred in not granting their motion for new trial because they did not file an answer due to a "mistake[]," they "have a meritorious defense," and granting the motion for new trial "would not result in delay or prejudice" to Bulldog Chemicals.

We review the trial court's denial of a motion for new trial for an abuse of discretion. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009); *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006). In other words, the court's ruling on a motion for new trial will not be disturbed on appeal absent a showing of an abuse of discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference

10

to guiding rules and principles. *See Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997); *Imkie v. Methodist Hosp.*, 326 S.W.3d 339, 344 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When as here, no findings of fact and conclusions of law are filed, the denial of a motion for new trial must be upheld on any legal theory supported by the evidence. *See Strackbein*, 671 S.W.2d at 38.

In *Craddock*, the Texas Supreme Court set forth three requirements that a defaulting party must satisfy to set aside a default judgment and obtain a new trial: (1) the defaulting party's failure to file an answer before judgment was not intentional or the result of conscious indifference, but was a mistake or accident; (2) the defaulting party has a meritorious defense; and (3) a new trial will not result in delay or prejudice to the non-defaulting party. 133 S.W.2d at 126.

To successfully challenge a default judgment, the defaulting party must allege, and support with sworn proof, the three *Craddock* requirements. *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966) (noting party challenging dismissal bears burden of establishing entitlement to relief); *Wal-Mart Stores, Inc. v. Kelley*, 103 S.W.3d 642, 644 (Tex. App.—Fort Worth 2003, no pet.); *Pickell v. Guar. Nat'l Life Ins. Co.*, 917 S.W.2d 439, 443 (Tex. App.—Houston [14th Dist.] 1996, no writ). Thus, to prevail on a motion for new trial under *Craddock*, the defaulting party must (1) allege facts and attach affidavits to a verified motion to set aside the default judgment or motion for new trial that would meet the three *Craddock* requirements

11

or (2) present evidence at the hearing on its motion that meets those requirements.[7] *See Pickell*, 917 S.W.2d at 443.  A trial court abuses its discretion in denying a new trial when the requirements of the *Craddock* test are satisfied.  *Dolgencorp*, 288 S.W.3d at 926; *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex. 1992); *Pickell*, 917 S.W.2d at 443.

In order to determine whether the trial court erred in not setting aside the default judgment against appellants, we first consider whether their failure to answer was not intentional or the result of conscious indifference, but due to a mistake or an accident.  "Conscious indifference" requires more than just mere negligence; rather, it means a "failure to take some action that would seem indicated to a person of reasonable sensibilities under the same circumstances."  *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995); *Mahand v. Delaney*, 60 S.W.3d 371, 374 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Sharpe v. Kilcoyne*, 962 S.W.2d 697, 701 (Tex. App.—Fort Worth 1998, no pet.); *see also Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 310 (Tex. 2012) ("Consciously indifferent conduct occurs when the defendant knew it was sued but did not care." (internal quotations omitted)).  Appellants must offer some excuse for their failure to answer, which need not necessarily be a good excuse.  *See Sutherland v. Spencer*, 376

---

[7]    In this case, there is no reporter's record from the trial court's hearing on appellants' motion for new trial.

S.W.3d 752, 755 (Tex. 2012); *Mahand*, 60 S.W.3d at 374 ("Even a slight excuse may justify a new trial."); *State v. Sledge*, 982 S.W.2d 911, 914 (Tex. App.— Houston [14th Dist.] 1998, no pet.).

Uncontroverted factual allegations in a defaulting party's motion for new trial and accompanying affidavits, if true, can negate intent or conscious indifference. *Todd v. Heinrich*, No. 01-10-00267-CV, 2011 WL 2183881, at *6 (Tex. App.— Houston [1st Dist.] June 2, 2011, no pet.) (mem. op.); *Jackson v. Mares*, 802 S.W.2d 48, 50 (Tex. App.—Corpus Christi 1990, writ denied); *see also Milestone Operating*, 388 S.W.3d at 309. However, if the non-defaulting party presents controverting evidence showing conscious indifference, the issue becomes a fact question for the trial court. *Todd*, 2011 WL 2183881, at *6; *Jackson*, 802 S.W.2d at 50. "The [trial] court, as fact-finder at a hearing on a motion for new trial, has the duty of ascertaining the true facts . . . and it is within the [trial] court's province to judge the credibility of the witnesses and to determine the weight to be given their testimony." *Jackson*, 802 S.W.2d at 51; *see also Todd*, 2011 WL 2183881, at *6. In determining whether the failure to answer was due to intentional disregard or conscious indifference, the court may look at all of the evidence in the record. *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994); *see also Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 82 (Tex. 1992); *see also Moya v. Lozano*, 921 S.W.2d 296, 299 (Tex. App.—Corpus Christi 1996, no writ) (holding

13

court reviews all evidence in record to determine whether allegations are controverted).

Here, appellants attached to their motion for new trial their two affidavits. In his affidavit, Polignone testified:

> Although I failed to properly answer the lawsuit in question, my failure was simply an oversight and not a matter of my conscious disregard for the seriousness of th[e] matter. Additionally, I never interacted with [Bulldog Chemicals] in my individual capacity. I only ever conducted business under the name Nu[G]entec . . . , a company registered under the laws of the state of Delaware.

In his affidavit, Roy similarly testified:

> Although I failed to properly answer the lawsuit in question, my failure was simply an oversight and not a matter of my conscious disregard for the seriousness of th[e] matter. Additionally, I never interacted with [Bulldog Chemicals] in my individual capacity. I only ever conducted business under the name Nu[G]entec . . . , a company registered under the laws of the state of Delaware.

Notably, appellants, in their affidavits, did not deny knowledge of Bulldog Chemicals's suit against them. And the record evidence shows that appellants received a demand letter from Bulldog Chemicals informing them that they owed Bulldog Chemicals $21,750 and if payment was not received "immediately," then Bulldog Chemicals would file suit. Further, after Bulldog Chemicals filed suit, Polignone was personally served with citation and a copy of the original petition on February 3, 2016, and Roy was personally served with citation and a copy of the original petition on March 2, 2016. And on April 28, 2016, appellants were served

14

by certified mail, return receipt requested, with Bulldog Chemicals's motion for default judgment and notice of the motion's May 9, 2016 submission date. Bulldog Chemicals's certified mail receipts are contained in the record and the "green cards" are signed by appellants, showing that they received the motion for default judgment and notice of the submission date. (Internal quotations omitted.)

When the defaulting party knows that it is being sued and the opposing party is actively pursuing its claim against it and in response does nothing, the defaulting party acts with conscious indifference. *See Sharpe*, 962 S.W.2d at 701; *Prince v. Prince*, 912 S.W.2d 367, 369–70 (Tex. App.—Houston [14th Dist.] 1995, no writ); *Johnson v. Edmonds*, 712 S.W.2d 651, 652–53 (Tex. App.—Fort Worth 1986, no writ); *see also In re R.R.*, 209 S.W.3d at 115 (receiving citation and doing nothing following service "does not constitute a mistake . . . sufficient to meet the *Craddock* requirements"); *Fiske v. Fiske*, No. 01-03-00048-CV, 2004 WL 1847368, at *7–8 (Tex. App.—Houston [1st Dist.] Aug. 19, 2004, no pet.) (mem. op.) (where defendant had actual knowledge of possible default judgment and did nothing, he did not establish failure to answer not result of conscious indifference); *cf. Milestone Operating*, 388 S.W.3d at 310.

Further, although appellants in their affidavit testified that their failure to "properly answer [Bulldog Chemicals's] lawsuit" was due to "oversight and not a matter of [their] conscious disregard for the seriousness of th[e] matter," they do not

15

provide any explanation as to why they did not take any action after receiving notice of the filing of Bulldog Chemicals's suit and its subsequently filed motion for default judgment. *See Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 575 (Tex. 2006) (conclusory statement must be supported by some explanation); *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 538 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (same); *Freeman v. Pevehouse*, 79 S.W.3d 637, 645–46 (Tex. App.—Waco 2002, no pet.) (defendant must explain under oath what mistake or accident caused failure to timely file answer); *see also Holt Atherton Indus.*, 835 S.W.2d at 82–83. And appellants' conclusory statements in their affidavits that their failure to answer was not the result of their "conscious disregard for the seriousness of th[e] matter" are not sufficient to satisfy the first requirement of *Craddock*. *See Holt Atherton Indus.*, 835 S.W.2d at 82–83 (conclusory allegations insufficient to establish *Craddock* requirements); *Sheraton Homes, Inc. v. Shipley*, 137 S.W.3d 379, 382 (Tex. App.—Dallas 2004, no pet.); *Freeman*, 79 S.W.3d at 645–46; *Folsom Invs., Inc. v. Troutz*, 632 S.W.2d 872, 875 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.) ("Conclusory allegations of no intent or conscious indifference do not suffice . . . ."); *see also Interconex*, 224 S.W.3d at 532 n.2 (conclusory means "[e]xpressing a factual inference without stating the underlying facts on which the inference is based" (internal quotations omitted)).

Finally, we note that appellants, in their unverified motion for new trial, did also assert that they are "residents of the State of California," are "unfamiliar with procedure in the State of Texas," "sought counsel from attorneys licensed out of the state," the "out of state" attorneys that appellants conferred with "were . . . unaware of the limitations placed on [appellants] in Texas [c]ourt[s]," and, although they "intended to seek local counsel," they "did [not do] so prior to the signing of the default judgment on May 11, 2016."[8] Notably, though, unverified factual allegations in a defaulting party's motion for new trial cannot be used to establish that his failure to file an answer was not intentional or the result of conscious indifference.[9] *See Wiseman v. Levinthal*, 821 S.W.2d 439, 442 (Tex. App.—Houston [1st Dist.] 1991, no writ) (holding defaulting party's allegation in motion for new trial "that his failure to answer was not due to conscious indifference" not verified or supported by affidavit and, thus, did not constitute competent evidence); *see also Ivy*, 407 S.W.2d at 214; *Chamberlain v. Chamberlain*, No. 12-09-00187-CV, 2011 WL 2135128, at *3 (Tex. App.—Tyler May 31, 2011, no pet.) (mem. op.) (allegation neither verified nor supported by affidavit not competent evidence or proof conduct not intentional or result of conscious indifference); *Suarez v. Suarez*, No. 13-04-108-CV, 2006 WL

---

[8] Appellants further assert that their "failure . . . to answer was purely a mistake of [p]ro se, out of state residents, and not conscious indifference."

[9] We note that the factual allegations in appellants' motion for new trial are not supported by the affidavits that appellants did file in connection with their motion.

17

1194960, at \*1 (Tex. App.—Corpus Christi May 4, 2006, no pet.) (mem. op.) (allegations in motion for new trial regarding failure to appear not verified or supported by affidavit or other evidence); *cf. Mathis v. Lockwood*, 166 S.W.3d 743, 744–46 (Tex. 2005) (holding evidence sufficient to establish first *Craddock* element where defaulting party's *sworn motion* for new trial asserted failure to appear at trial due to not receiving notice of setting).

After reviewing the evidence of appellants' acts and knowledge found in the record, we conclude that the trial court could have reasonably found that appellants "knew [they] w[ere] [being] sued but did not care." *See Milestone Operating*, 388 S.W.3d at 310 (internal quotations omitted); *see also Evans*, 889 S.W.2d at 269 (courts look to knowledge and acts of defaulting party to determine whether failure to answer intentional or due to conscious indifference). In other words, the trial court could have determined that appellants acted with conscious indifference to the proceedings when they failed to answer Bulldog Chemicals's suit, and as a result, they did not satisfy the first *Craddock* requirement. *See Craddock*, 133 S.W.2d at 126.

Accordingly, we hold that the trial court did not err in denying appellants' motion for new trial.

We overrule appellants' first issue.

## Frivolous Appeal

In its brief, Bulldog Chemicals contends that appellants' appeal is frivolous and asks this Court to "sanction[]" appellants. *See* TEX. R. APP. P. 45 (damages for frivolous appeals in civil cases).

After considering the record, briefs, and other papers filed in this Court, we may award a prevailing party "just damages" if we objectively determine that an appeal is frivolous. *Id.*; *see also Smith v. Brown*, 51 S.W.3d 376, 380–81 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). An appeal is frivolous when the record, viewed from the perspective of the advocate, does not provide reasonable grounds for the advocate to believe that its case could be reversed. *Smith*, 51 S.W.3d at 381. The decision to grant appellate sanctions is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation. *Id.* And rule 45 does not require the Court to award just damages in every case in which an appeal is frivolous. *Woods v. Kenner*, 501 S.W.3d 185, 198 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

After a review of the record, briefing, and other papers filed in this Court, we deny Bulldog Chemicals's request for sanctions against appellants.

## Conclusion

We affirm the judgment of the trial court and deny Bulldog Chemicals's request for sanctions under Texas Rule of Appellate Procedure 45.

Terry Jennings
Justice

Panel consists of Justices Jennings, Massengale, and Caughey.